EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ada Iris Albino Agosto<br>Recurrida<br><br>v.<br><br>Ángel Martínez, Inc. Ramón Orsini<br>Demandados<br><br>Ángel Martínez, Inc.<br>Peticionarios | Certiorari<br><br>2007 TSPR 111<br><br>171 DPR _____ |

Número del Caso: CC-2001-183

Fecha: 4 de junio de 2007

Tribunal de Apelaciones:

        Región Judicial de Bayamón Panel II

Juez Ponente:

        Hon. Charles Cordero Peña

Abogado de la Parte Peticionaria:

        Lcdo. Ruy N. Delgado Zayas
        Lcdo. Carlos M. Vergne
        Lcdo. José A. Ríos Rosa

Abogada de la Parte Recurrida:

        Lcda. Sonia Santiago Rivera

Materia: Hostigamiento Sexual

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ada Iris Albino Agosto
        Recurrida

        v.                                          *Certiorari*
                                    CC-2001-183
Ángel Martínez, Inc. Ramón
Orsini
        Demandados

    Ángel Martínez, Inc.
        Peticionario


Opinión emitida por la Jueza Asociada señora FIOL MATTA


En San Juan, Puerto Rico, a 4 de junio de 2007.

Este caso nos ofrece la oportunidad de delinear con mayor precisión la obligación patronal de tomar medidas inmediatas y apropiadas al conocer que entre sus empleados han ocurrido actos de hostigamiento sexual. Resolvemos que las medidas adoptadas por el patrono no fueron suficientes para liberarlo de responsabilidad frente a la recurrida.

I

La parte peticionaria no ha impugnado las determinaciones de hechos del foro de instancia. Estas revelan que la recurrida, señora Ada Iris Albino Agosto, fue empleada de la tienda "Nineteen Ninety Five" de Corozal desde el

20 de mayo de 1996, hasta el 22 de marzo de 1997. La señora Albino comenzó trabajando en el puesto de vendedora y fue ascendida a la posición de gerente en agosto de 1996. El señor William Otero era su supervisor inmediato en la tienda y el señor Ángel Martínez, presidente de la corporación demandada y peticionaria, Ángel Martínez, Inc., era su patrono.

Para esa época la tienda "Nineteen Ninety Five" tenía un Manual de Normas y Procedimientos que, entre otras cosas, regulaba los procedimientos a seguir en casos de hostigamiento sexual. Según la exposición narrativa de la prueba estipulada, durante todo el tiempo que la señora Albino trabajó en la tienda nunca vio dicho manual. En el adiestramiento que recibió del señor Otero no se le entregó el manual, no se discutió con ella el contenido de éste y tampoco se le orientó para que, como gerente, discutiera la información con sus empleados. Además, en la tienda no habían cartelones que comunicaran el texto del manual.

El codemandado, señor Ramón Orsini, era el contable de la corporación demandada. El señor Orsini conoce al señor Ángel Martínez desde pequeño y había trabajado con su familia desde 1970, por lo cual la relación entre ambos era una de patrono-empleado y de amistad. Según la exposición narrativa de la prueba estipulada renunció a la empresa en noviembre de 1997 cuando se eliminó su puesto a causa de un cambio administrativo.

Entre el señor Orsini y la señora Albino había una relación de compañeros de trabajo. Debido a las funciones del señor Orsini como contador de la corporación y las funciones de la señora Albino como gerente de tienda, ellos se comunicaban diariamente por teléfono y se veían en las reuniones mensuales de los gerentes de la corporación. Además, el señor Orsini visitaba la tienda de Corozal al menos una vez a la semana.

En junio o julio de 1996 la señora Albino solicitó un adelanto de nómina para pagar unas pruebas médicas de su hija. El señor Orsini le informó que la corporación no permitía el adelanto solicitado, pero que él podía prestarle el dinero. La señora Albino le aceptó un préstamo de $350.00 y en agosto, volvió a tomar $150.00 prestados del señor Orsini para pagar unos libros de sus hijos. Ambas deudas fueron saldadas por la señora Albino en febrero de 1997.

Según las determinaciones de hechos del Tribunal de Primera Instancia y la exposición narrativa de la prueba estipulada, el señor Orsini cambió su forma de tratar a la señora Albino en agosto de 1996. Para esa fecha la señora Albino y el señor Orsini se reunieron en el almacén de la tienda con relación a un informe de ventas de la tienda de Corozal. En esa ocasión, el señor Orsini comenzó a tocarle las manos a la señora Albino, le miró las partes del cuerpo, los senos, y le abría los ojos como si la quisiera tocar; le hizo comentarios, como "que

bien te queda ese traje", y le dijo que "tenía unas nalgas bonitas". Peor aún, el señor Orsini subía y bajaba las manos tocando sus partes genitales. El tribunal concluyó que el señor Orsini repitió este comportamiento en dos o tres ocasiones durante el mes de agosto.

Este cambio en el trato que el demandado le daba a su compañera de trabajo se manifestó también en las conversaciones entre ambos. En una ocasión, el señor Orsini llamó por teléfono a la señora Albino y ésta le informó que no había cumplido con la proyección de ventas de la tienda diciéndole "me caí por 75 centavos", a lo cual el señor Orsini contestó, "si te caíste te lastimaste las nalguitas, yo te puedo sobar". Durante otras conversaciones el señor Orsini le decía a la señora Albino que estaba bien vestida y le preguntaba que cuándo le iba a dar un beso. El tribunal encontró que ante este tipo de acercamientos la señora Albino se ponía nerviosa, se sentía presionada y reaccionaba cambiando el tema. Una vez confrontó al señor Orsini diciéndole que ella era una mujer casada, con hijos y que no sabía por qué él le hacía esos comentarios. El señor Orsini no cambió su conducta.

El 19 de septiembre de 1996, después que terminó la reunión de gerentes celebrada en la oficina del señor Ángel Martínez, la señora Albino le solicitó al señor Orsini la entrega de cierta mercancía que hacía falta en la tienda de Corozal. Mientras estaban en la oficina del

señor Orsini, éste le habló bajito a la señora Albino y le dijo: "Quédate conmigo que estoy solo". La señora Albino se negó indicándole que la esperaban su esposo e hijos.

Ese mismo día la secretaria del señor Ángel Martínez le pidió a la señora Albino que la llevara a su casa. Mientras la secretaria recogía para irse, la señora Albino salió al estacionamiento donde se encontró al señor Orsini. Éste la invitó a que se fueran todo un día a Caguas o a comer mientras otra empleada se hacía cargo de la tienda. La señora Albino se negó y tomó estos comentarios como una propuesta de carácter sexual.

Con motivo de estos incidentes, para septiembre de 1996, la señora Albino se sentía insegura, nerviosa, con mucha presión y temía que el señor Orsini la tocara o le hiciera comentarios fuera de lugar. La señora Albino rebajó de peso, comenzó a usar ropa más grande y se veía demacrada. Además, la relación con su familia comenzó a deteriorarse ya que no les prestaba atención y hasta comenzó a ser agresiva con su esposo.

Durante este tiempo, otra empleada de la tienda de Corozal, quien también era casada, le comentó a la señora Albino que el señor Orsini la llamaba a su casa, la invitaba a salir, le decía que dejara a su marido y que ella no tenía que trabajar porque él la podía mantener. A su vez, la señora Albino le informó a dicha empleada la

conducta impropia que el señor Orsini mostraba hacia ella.

El 16 o 17 de octubre de 1996, según las determinaciones de hechos del foro de instancia, la señora Albino decidió notificarle a su supervisor, el señor William Otero, el problema que ella y su compañera de trabajo tenían con el señor Orsini. La señora Albino le explicó al señor Otero que el señor Orsini le tiraba piropos y le hacía acercamientos de naturaleza sexual. Ese mismo día el señor Otero le informó al señor Martínez lo que la recurrida le había notificado.

Al otro día se celebró una reunión de gerentes en Caguas. Allí, en presencia del señor Otero, la señora Albino le ratificó al señor Martínez lo que ella había notificado a su supervisor sobre la conducta impropia exhibida por el señor Orsini. Le informó que en la reunión de gerentes celebrada en septiembre de 1996, el señor Orsini la invitó a quedarse con él y que la conducta mostrada por éste causaba que ella y su compañera de trabajo se sintieran hostigadas.

El señor Martínez reconoció que se trataba de un problema preocupante y le indicó a la señora Albino que ella tenía que decidir si se debía despedir al señor Orsini. La señora Albino se negó a hacerlo, pues según expresó, ese no era su deber, sino el deber del propio señor Martínez. Además, le informó al señor Martínez que lo que ella quería era que cesara el hostigamiento y que

el señor Orsini dejara de visitar la tienda de Corozal. El señor Martínez le contestó que hablaría con el señor Orsini.

El próximo día, 18 o 19 de octubre de 1996, el señor Martínez se reunió con la señora Albino y la otra empleada que alegadamente también era hostigada por el señor Orsini. El patrono concluyó que la conducta del señor Orsini era suficiente para constituir hostigamiento sexual y que conllevaba el despido. Por eso, el señor Martínez se reunió con el señor Orsini, le informó sobre las quejas de hostigamiento sexual presentadas por ambas empleadas y le solicitó la renuncia. El codemandado Orsini, según determinó el tribunal, "se puso bien colorado", se quedó callado y luego se levantó y fue a la farmacia a buscar un medicamento para la presión. A los quince minutos regresó y le dijo al señor Martínez que él no podía renunciar porque no había hecho nada. El patrono le indicó que iba a hacer una investigación y el codemandado no renunció.

En respuesta a las quejas de hostigamiento sexual y aún durante el mes de octubre de 1996, el señor Martínez le dio instrucciones a su secretaria y al señor Orsini para que canalizaran los trabajos de la tienda de Corozal, incluyendo las llamadas telefónicas, a través de dicha secretaria o del propio señor Martínez.[1] El señor

---

[1] En la exposición narrativa de la prueba estipulada se explican las instrucciones que el señor Ángel Martínez le había proporcionado a su secretaria, la señora Sonia Cruz:

Orsini aceptó estas instrucciones. El señor Martínez no verificó si el señor Orsini estaba haciendo más visitas de las necesarias a la tienda de Corozal o si se siguieron las instrucciones que había impartido. Entre la señora Albino y el señor Martínez había buena comunicación; hablaban del trabajo y de sus respectivos familiares. Sin embargo, el señor Martínez no le preguntó a la señora Albino si el señor Orsini la seguía hostigando y tampoco indagó con el supervisor inmediato de la señora Albino qué había sucedido con la situación de hostigamiento sexual denunciada por ella.

Determinó el tribunal que el señor Orsini continuó visitando la tienda de Corozal por distintas razones, después que el señor Martínez le llamó la atención. Una de las visitas fue un almuerzo de Acción de Gracias de los empleados de la tienda de Corozal, al cual fue invitado por la gerente, señora Albino. A fines de noviembre de 1996 el señor Orsini regresó al patrón de conducta anterior. Comenzó a hacerle llamadas hostigantes a la señora Albino pidiéndole que le diera un beso.

---

Ángel le dio instrucciones para que se hiciera cargo de los asuntos de la tienda de Corozal; le dijo que todo lo que fuera cuestión de pedido de mercancía o nómina que tratara ella de coger siempre las llamadas; cosas que no tuvieran que ver con contabilidad era el trabajo de Orsini y él tenía que coger ese trabajo. Ella atendía el pedido de mercancía y nómina, el trabajo que no fuera de contabilidad, este trabajo era de Orsini. Ella entiende que Ángel le indicó que no cogiera asuntos de contabilidad; el no le dio ninguna explicación y ella tampoco se la pidió. Esto era para la tienda de Corozal, la cual ella iba a atender y los números eran asunto de Orsini. Ángel era el que atendía los problemas de los empleados. En ese momento él no le dijo que habían problemas con empleados. Ángel le dijo que cogiera las llamadas de Corozal, pedidos de mercancía, nóminas, todo lo relacionado a Corozal, pero los números, si Orsini estaba los tenía que coger él. Esa fueron sus instrucciones; los números los cogía Orsini. Exposición Narrativa de la Prueba Estipulada, pág. 31-32.

El 26 o 27 de diciembre de 1996, por órdenes del señor Martínez, el codemandado Orsini visitó la tienda de Corozal para revisar un descuadre. Llegó temprano y le pidió a la otra empleada de la tienda que se quedara en el piso en lo que él se reunía con la señora Albino. Entonces, cerró la puerta, se le pegó a la recurrida y trató de besarla. La señora Albino se echó para atrás y le dijo "que [sic] usted hace". El señor Orsini se rió. Luego de este suceso, el señor Orsini visitó la tienda de Corozal en febrero de 1997.

El foro de instancia encontró probado que después de presentar la queja, la señora Albino invitó al señor Orsini y al señor Martínez al cumpleaños de su hijo. Según la exposición narrativa de la prueba estipulada, el señor Orsini no fue a la fiesta.[2] Además, el señor Otero testificó que para mediados de diciembre vio a la recurrida riéndose mientras hablaba por teléfono con el señor Orsini y que le dijo a ésta: "no cuques el avispero después de lo que ha pasado". El señor Otero informó de este incidente al señor Martínez quien le indicó que hablaría con el señor Orsini y ordenó al señor Otero que llevara el mensaje de que "cortaran" la "relación". No surge de las determinaciones de hechos del tribunal ni de la exposición narrativa de la prueba que efectivamente

---

[2] También según la exposición narrativa de la prueba estipulada la señora Albino negó haber invitado al señor Orsini a actividades familiares en su casa. Exposición Narrativa de la Prueba Estipulada, pág. 8.

hubiera hablado el señor Martínez con el señor Orsini tras este incidente.

El 7 de enero de 1997, la señora Albino y la otra empleada que había presentado la queja junto con ella, se querellaron ante el Departamento del Trabajo. Alegaron que el señor Martínez  no había actuado en torno a los actos de hostigamiento sexual del señor Orsini. El 14 de marzo de 1997 la señora Albino presentó una demanda por hostigamiento sexual contra el señor Ramón Orsini y la corporación Ángel Martínez, Inc. El 22 de marzo de 1997, el señor Otero le entregó una amonestación a la señora Albino y ésta le indicó que tenía problemas en su matrimonio, en la tienda y que no podía más con el hostigamiento que sufría del señor Orsini. Ese mismo día la señora Albino renunció a su trabajo.

La demandante Albino se reportó al Fondo del Seguro del Estado el 24 de marzo de 1997, como consecuencia de los actos de hostigamiento sexual a los que fue sometida mientras laboraba con la corporación Ángel Martínez, Inc. A la fecha en que se dicta la sentencia de instancia la señora Albino recibía tratamiento psiquiátrico de la Dra. Ada Lizzie Delgado Mateo.

El tribunal determinó que la relación de la señora Albino con su esposo se afectó negativamente como consecuencia del hostigamiento sexual sufrido en el trabajo. La demandante Albino estaba insegura, ansiosa y nerviosa. No atendía los quehaceres diarios, ni a los

hijos; se mostraba agresiva y no tenía relaciones íntimas con su esposo. En noviembre de 1996 el esposo de la señora Albino se fue del hogar debido a esta situación, pero posteriormente ella le contó sobre los actos de hostigamiento sexual cometidos por el señor Orsini y su esposo decidió regresar al hogar para darle apoyo.

La señora Albino padece de una depresión severa mayor, que es un trastorno afectivo que se demuestra por el estado deprimido prolongado, la pérdida de interés y de concentración, fatiga, dificultad para dormir, lentitud en los movimientos motores, llanto recurrente e ideación suicida. Se le recomendó tomar medicamentos antidepresivos, ansiolíticos y recibir terapia de sostén y apoyo. La condición de la señora Albino tiene varios elementos agravantes: tener que acudir al Tribunal, el problema ocupacional, problemas con su esposo como resultado del hostigamiento sexual en el empleo, el hecho de que su madre se tuvo que hacer cargo de sus hijos y problemas económicos. En su testimonio la Dra. Delgado indicó que no ha visto mejoría en el tratamiento, que la señora Albino no tiene tolerancia para realizar las labores cotidianas que se requieren para trabajar y que le recomienda solicitar una incapacidad ocupacional.

El 7 de agosto de 1998, el Tribunal de Primera Instancia determinó que la conducta del señor Orsini constituyó hostigamiento sexual en su modalidad de ambiente hostil y que el patrono no llevó a cabo una

acción apropiada para corregir la situación. Le impuso responsabilidad solidaria a los codemandados y determinó que los daños y perjuicios sufridos por la recurrida ascienden a un total de $75,000 y según el artículo 11 de la Ley núm. 17 de 22 de abril de 1988, le corresponde a ésta una suma igual al doble de los daños sufridos. Además, el tribunal le impuso a los codemandados el pago de $18,750.00 en concepto de honorarios de abogados y las costas del litigio.

De la sentencia del Tribunal de Primera Instancia recurrieron los demandados al anterior Tribunal de Circuito de Apelaciones, que confirmó la sentencia recurrida. El 9 de marzo de 2001 la corporación demandada Ángel Martínez, Inc. solicitó nuestra intervención mediante petición de certiorari, la cual fue acogida en una segunda moción de reconsideración. Posteriormente, tanto la parte recurrida como la peticionaria presentaron sus correspondientes alegatos.

La parte peticionaria señala que el foro apelativo erró al no revocar la determinación del Tribunal de Primera Instancia que le impone responsabilidad por los actos de hostigamiento sexual alegados por la señora Albino y la obliga a pagar una cantidad exagerada por concepto de daños. Además, plantea que la sentencia del tribunal apelativo no está sustentada por las determinaciones de hechos del tribunal de instancia; que no hay una determinación de hechos del tribunal de

instancia que establezca un nexo causal entre el alegado hostigamiento sexual y los daños sufridos por la recurrida; y que la sentencia del foro apelativo tiene el efecto de adoptar una norma que impone responsabilidad absoluta al patrono en los casos de hostigamiento sexual entre empleados y releva a la víctima de su obligación de notificar al patrono los actos que podrían ser constitutivos de hostigamiento sexual.

## II

Es principio rector de nuestro orden social, establecido en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, que la dignidad del ser humano es inviolable. En razón de esa dignidad se prohíbe expresamente el discrimen por razón de raza, color, sexo, nacimiento, origen, condición social e ideas políticas o religiosas. Además, también como derivado lógico del imperativo de la dignidad, nuestra Constitución protege a toda persona contra ataques abusivos a su honra, reputación, vida privada o familiar. Art. II, Secs.1 y 8, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, págs. 257 y 301. Cumpliendo este mandato constitucional la Asamblea Legislativa ha adoptado leyes que protegen la dignidad del ser humano en el contexto laboral. Entre éstas se aprobó la Ley núm. 17 de 22 de abril de 1988 con el propósito de elevar el hostigamiento sexual en el empleo al mismo nivel jurídico que las otras modalidades de discrimen identificadas y proscritas en

leyes anteriores. Exposición de Motivos de la Ley núm. 17 de 22 de abril de 1988, 1988 Leyes de Puerto Rico pág. 81. Esta ley prohíbe el hostigamiento sexual en el empleo y declara a éste una forma de discrimen por razón de género que atenta contra la dignidad humana. 29 L.P.R.A. sec. 155.

La Ley núm. 17 define el hostigamiento sexual en el empleo de la siguiente manera:

> El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:
>
> (a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
>
> (b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
>
> (c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. 29 L.P.R.A. sec. 155b.

El hostigamiento sexual en el empleo tiene pues dos modalidades. Los incisos (a) y (b) de la definición citada se refieren a la modalidad de hostigamiento equivalente o *quid pro quo*, mientras que el inciso (c) recoge la modalidad de hostigamiento sexual por ambiente hostil. Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643, 653 (1994). La determinación de si determinada conducta en el empleo constituye

hostigamiento sexual en cualquiera de sus dos modalidades se hará considerando la totalidad de las circunstancias y los hechos particulares de cada caso. 29 L.P.R.A. sec. 155c.

Hemos resuelto que la modalidad de hostigamiento equivalente o *quid pro quo* se produce cuando el sometimiento o rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo. El demandante debe, por tanto, probar que el sometimiento o rechazo a la solicitud de favores sexuales y al sufrimiento de avances de igual tipo fue la causa de una decisión adversa en cuanto a una condición o término de su empleo. Rodríguez Meléndez v. Supermecado Amigo, Inc., 126 D.P.R. 117, 132 (1990). Véase además, Afanador Irizarry v. Roger Electric Co., Inc., 2002 T.S.P.R. 56. Si es despedido u obligado a renunciar, el demandante debe establecer que las deficiencias en el desempeño de sus funciones laborales, por las cuales fue despedido o que llevaron a su renuncia, son consecuencia directa del ambiente hostil en el que se vio obligado a trabajar. Deberá probar también que estuvo sujeto a hostigamiento sexual por ambiente hostil. Rodríguez Meléndez v. Supermercado Amigo, Inc., supra, 133. Véase además, In re Robles Sanabria, 151 D.P.R. 483, 501 (2000).

La modalidad de hostigamiento sexual por ambiente hostil se produce cuando la conducta sexual para con una

persona tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear un ambiente laboral intimidante, hostil u ofensivo. La justiciabilidad de una reclamación por ambiente hostil no requiere que dicha conducta produzca un daño económico y tampoco es indispensable que ésta sea de naturaleza explícitamente sexual; basta con que el hostigamiento o trato desigual se dirija a la persona únicamente por razón de su género. La conducta constitutiva de hostigamiento debe ser lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo. Este examen debe realizarse tomando en consideración factores como la naturaleza de la conducta alegada, su frecuencia e intensidad, el contexto en el que ocurre, la duración de la misma y la conducta y circunstancias personales de la alegada víctima. Rodríguez Meléndez v. Supermercado Amigo, Inc., supra, 131-132. Véase además, In re Robles Sanabria, supra, 500-501, Afanador Irizarry v. Roger Electric Co., Inc., supra.

Una vez se determina que una conducta constituye hostigamiento sexual en el empleo, en cualquiera de sus dos modalidades, la Ley núm. 17 dispone cómo responsabilizar o exonerar al patrono por las consecuencias de la conducta ilegal.[3] Así el patrono será

---

[3] La Ley núm. 17 define los términos empleado, patrono, persona y supervisor de la siguiente manera:

responsable por sus propios actos y los de sus agentes o supervisores, independientemente de si dichos actos fueron autorizados o prohibidos por éste, o si el patrono sabía o debía estar enterado de dicha conducta. 29 L.P.R.A. sec.155d.[4] Sin embargo, si quienes incurrieron en el hostigamiento sexual fueron personas no empleadas por el patrono, éste será responsable sólo si él, sus agentes o supervisores sabían o debían saber de dicha conducta y

---

(1) Empleado.--Significa toda persona que trabaja para un patrono y que reciba compensación por ello o todo aspirante a empleo. Para efecto[s] de la protección que se confiere mediante las secs. 155 a 155l de este título, el término empleado se interpretará en la forma más amplia posible.

(2) Patrono.--Significa toda persona natural o jurídica de cualquier índole, el Gobierno del Estado Libre Asociado de Puerto Rico, incluyendo cada una de sus tres Ramas y sus instrumentalidades o corporaciones públicas, los gobiernos municipales y cualquiera de sus instrumentalidades o corporaciones municipales, que con ánimo de lucro o sin él, emplee personas mediante cualquier clase de compensación y sus agentes y supervisores. Incluye, además, las organizaciones obreras y otras organizaciones, grupos o asociaciones en las cuales participan empleados con el propósito de gestionar con los patronos sobre los términos y condiciones de empleo, así como las agencias de empleo.

(3) Persona.--Significa persona natural o jurídica.

(4) Supervisor.--Significa toda persona que ejerce algún control o cuya recomendación sea considerada para la contratación, clasificación, despido, ascenso, traslado, fijación de compensación o sobre el horario, lugar o condiciones de trabajo o sobre tareas o funciones que desempeña o pueda desempeñar un empleado o grupo de empleados o sobre cualesquiera otros términos o condiciones de empleo, o cualquier persona que día a día lleve a cabo tareas de supervisión.

[4] El Tribunal Supremo de los Estados Unidos ha establecido el siguiente estándar de responsabilidad patronal bajo el Título VII de la Ley de Derechos Civiles de 1964, 42 U.S.C.A. §2000e et seq., en aquellos casos donde los actos de hostigamiento sexual son ejecutados por supervisores en el empleo:

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a **supervisor** with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. (Énfasis suplido) Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).

no tomaron una acción inmediata o apropiada para corregir la situación. 29 L.P.R.A. sec. 155f.

Cuando la conducta denunciada ocurre entre empleados aplica una norma similar: el patrono será responsable en la medida en que conocía o debía conocer de dicha conducta, por sí o constructivamente a través de sus agentes o supervisores, y no logra establecer que tomó una acción inmediata y apropiada para corregir la situación. 29 L.P.R.A. sec. 155e.[5] En esos casos la víctima puede probar que su patrono sabía de la conducta alegada demostrando que le notificó la situación a él o ella, o a su agente o supervisor o que la situación era tan grave que éstos debían conocerla. <u>Rodríguez Meléndez v. Supermecado Amigo, Inc.</u>, supra, 128-129.[6] Una vez el empleado demuestra que el patrono conocía o debió haber conocido de los actos de hostigamiento, entonces le corresponderá al patrono probar que actuó de manera inmediata y apropiada para corregir la situación. Esto implica que en el momento en que un empleado le notifica a su patrono, agente o supervisor que ha sido hostigado por un compañero de trabajo, se activa la responsabilidad afirmativa del patrono de tomar acción correctiva. 29

---

[5] El estándar de responsabilidad patronal bajo el Título VII de la Ley de Derechos Civiles de 1964, supra, en casos donde los actos de hostigamiento sexual ocurren entre empleados es el siguiente:
> With respect to conduct **between fellow employees**, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action. (Énfasis suplido) 29 CFR §1604.11d.

[6] Véase además, <u>Henson v. City of Dundee</u>, 682 F. 2d 897, 905 (1982).

L.P.R.A. 155e. Exposición de Motivos de la Ley núm. 17 de 22 de abril de 1988, 1988 Leyes de Puerto Rico pág. 81.[7]

En Delgado Zayas, supra, resolvimos que la acción inmediata requerida ante unos actos de hostigamiento sexual entre empleados era el despido, porque el reglamento del patrono claramente exponía que la primera violación de un empleado a su política contra el hostigamiento sexual conllevaría el despedido. En esas circunstancias el patrono actuó de forma inmediata y apropiada al despedir a un empleado que conocía del reglamento y cometió actos de hostigamiento sexual de tal seriedad que puso en peligro el orden de la empresa. Delgado Zayas, supra, 657-658.

Es necesario aclarar, sin embargo, que la Ley núm. 17 no establece el despido como la "acción inmediata y apropiada" que se requiere del patrono ante unos actos de hostigamiento sexual entre empleados. La Ley núm. 17 permite que el patrono se libere de responsabilidad mediante una "acción inmediata y apropiada" distinta al despido.

Una acción inmediata y apropiada es aquella que razonablemente terminará sin demora los actos de hostigamiento sexual y evitará la repetición de éstos de manera efectiva.[8] Para determinar si un patrono tomó una acción inmediata o apropiada es necesario examinar las

---

[7] Véase además, Star v. West, 237 F. 3d 1036, 1038 (2001), E.E.O.C. v. Wyeth, 302 F.Supp.2d 1041, 1068 (2004).

circunstancias particulares de cada caso, entre éstas, la existencia de un reglamento aplicable a la situación y el cumplimiento por el patrono con lo allí dispuesto.

Además de la responsabilidad que tiene un patrono por los actos de hostigamiento sexual en el empleo que ocurran en su empresa, todo patrono tiene ciertos deberes afirmativos dirigidos a prevenir el hostigamiento. Entre éstos, tiene el deber continuo de mantener un centro de trabajo libre de hostigamiento sexual e intimidación; el deber de prevenir, desalentar y evitar el hostigamiento sexual en el empleo; el deber de exponer claramente su política contra el hostigamiento sexual en el lugar de trabajo; y el deber de garantizar que sus supervisores y empleados puedan trabajar con seguridad y dignidad. 29 L.P.R.A. sec. 155i. La Ley núm. 17 requiere que el patrono tome las medidas necesarias para poder cumplir de forma continua con los deberes antes expuestos. Las siguientes son algunas de las medidas requeridas por la ley:

(a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.

(b) Poner en práctica los métodos necesarios para crear conciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.

(c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan bajo las secs. 155 a 155l de este título, al amparo de las secs. 1821 a 1341 de este título, las secs.

---

[8] Véase, Yamaguchi v. U.S. Dept. of Air Force, 109 F.3d 1475, 1483 (1997), Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1528 (1995).

146 a 151 de este título y de la Constitución del Estado Libre Asociado de Puerto Rico.

(d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. 29 L.P.R.A. sec.155i.

Al determinar si un patrono ha tomado una acción inmediata y apropiada ante una querella de hostigamiento sexual entre empleados es necesario evaluar si éste cumplía con los deberes continuos que le impone la Ley núm. 17. Ello requerirá evaluar si el patrono tenía una política efectiva contra el hostigamiento sexual en el empleo; si expresaba claramente y tomaba las medidas necesarias para crear conciencia y dar a conocer dicha política; si daba suficiente publicidad en el lugar de trabajo sobre los derechos y protecciones que cobijan a los empleados; y si había establecido un procedimiento adecuado y efectivo para atender querellas sobre hostigamiento sexual.

III

En el caso ante nuestra consideración es evidente que la conducta desplegada por el señor Orsini hacia la señora Albino, mientras ésta trabajaba en la tienda "Nineteen Ninety Five" de Corozal, constituía hostigamiento sexual. En agosto de 1996, durante una reunión en el almacén de la tienda, el señor Orsini hostigó a la señora Albino tocándole sus manos, mirándole las partes del cuerpo como si la quisiera tocar y haciéndole comentarios impropios, como por ejemplo, que "tenía las nalgas bonitas". Además, en dicho incidente el

señor Orsini subía y bajaba las manos mientras tocaba sus partes genitales. Esto último lo hizo en dos o tres ocasiones durante el mes de agosto.

El señor Orsini hostigaba a la señora Albino a través de sus conversaciones y llamadas telefónicas. Le decía que le podía sobar las nalgas y le preguntaba que cuándo le iba a dar un beso. En septiembre de 1996, al finalizar una reunión de gerentes, el señor Orsini le propuso a la señora Albino que se quedara con él porque estaba solo y la invitó a pasar todo un día en Caguas mientras otra empleada se hacía cargo de la tienda en Corozal.

El señor Orsini continuó hostigando a la señora Albino aún después que el patrono señor Martínez le informara, en octubre de 1996, sobre la queja en su contra que habían presentado dos empleadas de la tienda, incluyendo a la recurrida, por sus actos de hostigamiento sexual y después que se le impartieran instrucciones de llevar a cabo los trabajos de la tienda de Corozal a través del propio señor Martínez o su secretaria. El patrón de conducta hostigante se restableció en noviembre de 1996. Este incluyó llamadas telefónicas impropias y actos corporales hostigadores. En una ocasión, siguiendo las órdenes de su patrono de visitar la tienda de Corozal para revisar un descuadre, el señor Orsini se le pegó a la señora Albino y trató de besarla.

La conducta antes descrita creó un ambiente laboral hostil, intimidante y ofensivo que tuvo el efecto de

interferir irrazonablemente con el desempeño de la señora Albino en su taller de trabajo. En septiembre de 1996 la señora Albino se sentía insegura, nerviosa, con mucha presión y temía que el señor Orsini la tocara o le hiciera comentarios fuera de lugar. La señora Albino rebajó de peso, comenzó a usar ropa más grande y se veía demacrada. El ambiente hostil al que fue sometida la señora Albino duró hasta su último día de trabajo, cuando su supervisor le entregó una amonestación por deficiencias en el desempeño de sus funciones laborales y la recurrida le informó que tenía problemas en su matrimonio, en la tienda y que no podía más con el hostigamiento sexual que sufría por parte del señor Orsini. Ese mismo día la recurrida decidió renunciar.

Ante los hechos que el Tribunal de Primera Instancia encontró probados y que la parte peticionaria no ha impugnado, concluimos que la conducta del señor Orsini constituyó hostigamiento sexual en la modalidad de ambiente hostil. Rodríguez Meléndez v. Supermercado Amigo, Inc., supra, In re Robles Sanabria, supra, Afanador Irrizarry v. Roger Electric Co., Inc., supra. Además de incurrir en esta conducta ilegal, el señor Orsini quebrantó la política de la empresa en contra del hostigamiento sexual. Anteriormente hemos establecido que el manual de normas de una empresa forma parte del contrato de trabajo de los empleados. Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763, 775-776 (1992). En

específico, el Manual de Normas y Procedimientos de la tienda "Nineteen Ninety Five" dispone:

> Es responsabilidad de todo el personal de esta Empresa el no incurrir en hostigamiento sexual ni crear un ambiente hostil en el trabajo. También debe velar porque otros compañeros de trabajo, ya sean supervisores, gerentes o empleados regulares, no incurran en conducta hostigante o ayuden a establecer un ambiente hostil de trabajo.
> La Empresa tampoco tolerará conducta hostigante hacia un empleado por parte de un cliente o visitante a nuestra Empresa. La Ley claramente prohíbe este tipo de conducta, no importa de donde provenga, y la Empresa no tolerará este tipo de conducta, no importa quien incurra en ella. Nadie tiene que someterse, aceptar ni tolerar este tipo de conducta en nuestra Empresa.

Habiendo determinado que la conducta del señor Orsini es constitutiva de hostigamiento sexual en el empleo, examinemos la responsabilidad del patrono con relación a dicha conducta. Tratándose de una situación de hostigamiento sexual entre empleados debemos establecer, en primer lugar, si la señora Albino probó que su patrono o supervisor sabía o debía estar enterado de dicha conducta y en segundo lugar, si el patrono probó haber tomado una acción inmediata y apropiada para corregir la situación. 29 L.P.R.A. sec.155e. Respecto a esto, el señor Martínez alega que la sentencia del foro apelativo tiene el efecto de adoptar una norma que impone responsabilidad absoluta al patrono en los casos de hostigamiento sexual entre empleados. No tiene razón. La sentencia recurrida no incurre en el error señalado; más bien, el tribunal apelativo aplica la doctrina vigente, de acuerdo a la cual, según hemos explicado, la

responsabilidad de los patronos ante este tipo de situación no es absoluta y depende de los dos elementos anteriormente descritos.

El que la señora Albino hubiera notificado a su supervisor y luego ratificado en conversación directa con su patrono que el señor Orsini la estaba hostigando sexualmente, es prueba suficiente para establecer que el patrono conocía sobre los actos de hostigamiento sexual ocurridos entre sus empleados. Rodríguez Meléndez v. Supermercado Amigo, Inc., supra, 128-129.[9] Ese mismo hecho demuestra que se había activado la responsabilidad del patrono de tomar una acción inmediata y apropiada que razonablemente terminara sin demora los actos de hostigamiento sexual y evitara la repetición de éstos de manera efectiva.[10] Le correspondía entonces al patrono demostrar que tomó acción no sólo inmediata, sino apropiada para liberarse de responsabilidad. 29 L.P.R.A. sec. 155e. A la luz de la totalidad de las circunstancias de este caso resolvemos que el señor Martínez tomó una acción inmediata, pero no apropiada, para corregir la situación. Veamos.

El manual de normas y procedimientos de la empresa explica los pasos que el patrono deberá seguir ante una querella de hostigamiento sexual presentada por alguno de sus empleados. El manual dispone al respecto:

---

[9] Véase además, Henson v. City of Dundee, supra.
[10] Véase, Yamaguchi v. U.S. Dept. of Air Force, supra, Fuller v. City of Oakland, Cal., supra, Star v. West, supra, E.E.O.C. v. Wyeth, supra.

Toda persona que haya presenciado o sea víctima de un acto de hostigamiento sexual, podrá querellarse con sus supervisores según el procedimiento establecido en este manual. La Empresa investigará las querellas y tomará aquella **acción correctiva que entienda necesario**. Se garantizará la confidencialidad a todas las partes envueltas.

Toda querella de hostigamiento será **investigada** por la Empresa. Toda investigación se mantendrá en estricta confidencialidad, y la Empresa no divulgará información sobre la querella o los resultados de la misma a personas que no estén relacionadas con la investigación. Por supuesto, como parte de toda investigación, será necesario entrevistar a distintas personas, pero se usará la mayor discreción posible para evitar publicidad innecesaria a la querella.

La Empresa hará todo lo que esté a su alcance para investigar y disponer de toda reclamación por hostigamiento sexual de la forma más **rápida** y confidencialmente posible. (Énfasis suplido)

No hay duda que el supervisor inmediato de la señora Albino fue diligente al informar al señor Martínez lo que la recurrida le había notificado. El señor Martínez también actuó inmediatamente al recibir esta información y en cumplimiento con las normas del manual de la empresa, decidió iniciar una investigación sobre los hechos alegados. Apenas un día después de advenir en conocimiento de la queja se reunió con la señora Albino, quien le confirmó lo que había notificado a su supervisor y le solicitó que tomara acción para que cesara el hostigamiento sexual y el señor Orsini dejara de visitar la tienda de Corozal.

Un día después de esta reunión el señor Martínez se reunió nuevamente con la señora Albino. En esta ocasión estuvo presente la otra empleada que alegadamente también era hostigada por el señor Orsini. Durante esta reunión

el señor Martínez concluyó que la conducta del señor Orsini era constitutiva de hostigamiento sexual y conllevaba el despido. Sin embargo, cuando se reunió con el señor Orsini, y éste negó haber incurrido en la conducta imputada y no accedió a renunciar, el señor Martínez decidió no despedirlo y no continuar con la investigación. El manual de normas y procedimientos de la empresa requiere que el patrono tome la acción correctiva que entienda necesaria y que todo empleado que incurra en actos de hostigamiento sexual sea sancionado. El manual explica:

> La persona que incurra en conducta hostigante o que ayude a establecer un ambiente hostil de trabajo será **sancionada** por la Empresa. De igual forma, aquellas personas que tienen conocimiento de conducta sexual prohibida, pero que rehúsan suplirle esta información a la Empresa podrán ser igualmente sancionadas.
> Toda persona que haya presenciado o sea víctima de un acto de hostigamiento sexual, podrá querellarse con sus supervisores según el procedimiento establecido en este manual. **La Empresa investigará las querellas** y tomará aquella **acción correctiva que entienda necesario.** Se garantizará la confidencialidad a todas las partes envueltas. (Énfasis suplido)

El señor Martínez optó por imponer una medida correctiva que no cumplió con las exigencias del manual, pues no sancionó al señor Orsini. Optó, en vez, por impartir unas "instrucciones" para que los trabajos de la tienda de Corozal se realizaran a través del propio señor Martínez o su secretaria. El propósito de estas instrucciones fue minimizar el contacto entre el señor Orsini y las empleadas de la tienda de Corozal pero no

surge de la prueba, ni de las determinaciones del tribunal que prohibieran todo contacto de Orsini con dicha tienda.[11] Por eso, aunque tuvieran como objetivo evitar que ocurrieran actos de hostigamiento sexual, estas instrucciones no aseguraron que el señor Orsini cesara de visitar la tienda de Corozal y no eliminaron todo tipo de contacto entre el señor Orsini y la recurrida. Esto lo comprueba el hecho de que el 26 o 27 de diciembre de 1996 el demandado Orsini visitó la tienda de Corozal **por órdenes del señor Martínez**.

La medida seleccionada por el señor Martínez no eliminaba todo tipo de contacto entre la señora Albino y el señor Orsini en el taller de trabajo. Tampoco incluía un elemento de supervisión que razonablemente evitara que los actos de hostigamiento sexual se repitieran. Según los hechos probados de este caso, la medida seleccionada por el señor Martínez no contenía dicho elemento, por el contrario, éste no supervisó de forma efectiva la situación entre ambos empleados.

El señor Martínez no habló con la señora Albino, con el supervisor de ésta, el señor Otero, o con el propio señor Orsini para verificar si había ocurrido otro acto de hostigamiento sexual. Sabiendo éste que el señor Orsini y la señora Albino necesariamente se verían

---

[11] Las instrucciones surgen del testimonio de la secretaria del señor Martínez antes citado, supra, nota 1.

personalmente el día que el señor Orsini visitó la tienda de Corozal por órdenes suyas, el señor Martínez no hizo esfuerzo alguno para verificar si la visita había marchado libre de hostigamiento sexual. Tampoco verificó si el señor Orsini había cumplido con las instrucciones que el propio señor Martínez había impartido. Cuando el señor Otero le informó que había visto a la señora Albino riéndose en una conversación por teléfono con el señor Orsini, el señor Martínez no investigó si el señor Orsini había violado las instrucciones específicas de no llamar a la tienda de Corozal. En fin, el señor Martínez no continuó con la investigación luego de reunirse con el señor Orsini, no se cercioró del cumplimiento del señor Orsini con sus instrucciones ni verificó si éste estaba haciendo llamadas hostigantes a la tienda de Corozal, o si la señora Albino y el señor Orsini habían tenido algún tipo de contacto que culminara en un acto de hostigamiento sexual.

Esta falta de supervisión e indiferencia tuvo como resultado el que para fines de noviembre de 1996, el señor Orsini comenzara a hacer llamadas hostigantes a la señora Albino y que durante una visita que hizo a la tienda de Corozal por órdenes de su patrono, hostigara a la recurrida, pegándosele al cuerpo y tratando de darle un beso. Aunque la recurrencia de conducta hostigante no es determinante de la razonabilidad de una medida

correctiva seleccionada por el patrono, ciertamente es un factor importante que debemos tomar en consideración.[12]

Cuando el patrono selecciona una acción dirigida a corregir actos de hostigamiento sexual entre empleados, debe notificar de ello tanto al empleado hostigador como a su víctima, especificándoles la acción seleccionada.[13] Ello es particularmente importante cuando el hostigador permanece en el taller de trabajo, pues es la única manera de poner a la víctima en conocimiento de las medidas que su patrono ha adoptado para solucionar el problema. En este caso, el señor Martínez no notificó a la señora Albino sobre la medida correctiva seleccionada.

Hemos visto que tanto el supervisor de la señora Albino, como su patrono, el señor Martínez, tomaron acción inmediata ante la queja presentada por la recurrida. No hubo demora irrazonable por parte del señor Otero en notificarle a su patrono la queja presentada por la señora Albino, como tampoco el señor Martínez demoró irrazonablemente en dar inicio a una investigación y tomar una acción correctiva, según lo requiere el propio manual de la empresa. Sin embargo, la acción correctiva seleccionada por el patrono no podía, razonablemente, evitar de forma efectiva que los actos de hostigamiento sexual se repitieran. La acción seleccionada por el

---

[12] Véase, Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (1998), Stuart v. General Motors Corp., 217 F.3d 621, 633 (2000).
[13] Véase, Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors, Equal Employment Opportunity Commission Enforcement, Guide to Employment Law and Regulation, 3 GELR §73:12.

patrono no cumplió con las exigencias del manual de la empresa, no fue notificada a la señora Albino, no eliminaba todo tipo de contacto entre la señora Albino y el señor Orsini en el taller de trabajo y no contenía un elemento efectivo de supervisión que evitara la repetición de un acto de hostigamiento sexual entre ambos empleados. Estos no son requisitos onerosos para un patrono que ha sido notificado sobre los actos de hostigamiento sexual y tiene la obligación de supervisar para que sus empleados no incurran en dicha conducta ilegal.

La parte peticionaria alega que a base de la conducta de la señora Albino, el señor Martínez no tenía otra opción que concluir que el hostigamiento sexual había cesado y que había cumplido con su responsabilidad. No tiene razón. El patrono no puede incumplir su responsabilidad afirmativa de evitar que los actos ilegales vuelvan a ocurrir amparándose en que el comportamiento de la víctima no demuestra de forma evidente que los actos de hostigamiento sexual hayan continuado. Aunque el Tribunal de Primera Instancia creyó el testimonio del señor Orsini en cuanto a que fue invitado al cumpleaños del hijo de la señora Albino, al igual que el señor Martínez, ese hecho, de por sí, no demuestra que el hostigamiento sexual hubiera cesado.[14] Tampoco es prueba de ello el que en una ocasión la señora

Albino se riera durante una llamada telefónica con el señor Orsini. Ante la aparente conducta ambigua de la señora Albino el señor Martínez venía obligado a investigar si el hostigamiento sexual había continuado, en lugar de presumir que había cesado. Por tanto, la conducta de la señora Albino no liberó a su patrono de responsabilidad.

Es importante tomar en consideración también que el señor Martínez no cumplió con varios de los deberes continuos que le impone la Ley núm. 17. La empresa tenía una política contra el hostigamiento sexual en el empleo y había establecido un procedimiento adecuado y efectivo para atender querellas sobre hostigamiento sexual en el Manual de Normas y Procedimientos de la tienda "Nineteen Ninety Five". Sin embargo, el señor Martínez no utilizó los métodos necesarios para crear conciencia sobre el problema y dar a conocer la política de la compañía; tampoco dio suficiente publicidad en el lugar de trabajo a los derechos y protecciones que cobijaban a sus empleados. Prueba de este incumplimiento es que durante el adiestramiento de la señora Albino no se le entregó, ni se discutió con ella el contenido del manual, no se le orientó para que como gerente discutiera la información con sus empleados, y en la tienda de Corozal tampoco habían cartelones que comunicaran el texto del manual.

---

[14] La señora Albino impugna esta determinación de hechos en el alegato presentado ante este Tribunal. Alegato de la Recurrida, pág. 17. Véase también nota 2.

La parte peticionaria alega que la sentencia del tribunal apelativo no está sustentada por las determinaciones de hechos del Tribunal de Primera Instancia. No tiene razón. A base de todas las circunstancias particulares de este caso, concluimos que el señor Martínez, como presidente de la corporación demandada y peticionaria Ángel Martínez, Inc., tomó una acción inmediata, pero no apropiada, para corregir los actos de hostigamiento sexual del señor Orsini en contra de la señora Albino. Al incurrir en esta omisión, la parte peticionaria es responsable por los actos de hostigamiento sexual ocurridos entre sus empleados y los daños y perjuicios que a causa de éstos sufrió la parte recurrida. 29 L.P.R.A. sec. 155e. Por tanto, la sentencia del anterior Tribunal de Circuito de Apelaciones está sustentada por las determinaciones de hechos del Tribunal de Primera Instancia.

La parte peticionaria arguye, además, que la recurrida tenía la obligación de notificarle al señor Martínez que el hostigamiento sexual por parte del señor Orsini se había reanudado en noviembre de 1996. Toda vez que ha quedado establecida la responsabilidad del patrono por no tomar una acción apropiada ante los actos de hostigamiento sexual del señor Orsini, no es necesario discutir esta alegación.

La parte peticionaria también alega que el Tribunal de Primera Instancia no estableció un nexo causal entre

los actos de hostigamiento sexual del señor Orsini y los daños sufridos por la recurrida. Nuevamente, no tiene razón. El Tribunal de Primera Instancia determinó que como consecuencia del hostigamiento sexual sufrido en el empleo la señora Albino se sentía insegura, ansiosa, nerviosa, rebajó de peso y se veía demacrada; que la relación de la señora Albino con su familia se perjudicó ya que ésta dejó de atender a sus hijos, los quehaceres diarios del hogar y su relación matrimonial, pues se mostraba agresiva y no tenía relaciones íntimas con su esposo; que en noviembre de 1996, el esposo de la señora Albino abandonó su hogar a causa de esta situación y que regresó para darle apoyo a su esposa cuando ella le contó sobre el hostigamiento sexual que sufría en el empleo.

El tribunal determinó, además, que la señora Albino padece de una depresión severa mayor que muestra como síntomas un estado deprimido prolongado, la pérdida de interés y de concentración, fatiga, dificultad para dormir, lentitud en los movimientos motores, llanto recurrente e ideación suicida.[15] También determinó que la condición de la señora Albino es agravada por su problema

---

[15] En la exposición narrativa de la prueba estipulada la Dra. Ada Lizzie Delgado Mateo explica:

> Para llegar al diagnóstico de depresión mayor severa hay que tener un número de síntomas específicos y en este caso, en dos semanas continuas, la paciente de este caso o cualquier paciente debe reflejar por lo menos cinco (5) de los siguientes síntomas: estado de depresión prolongada, continua de por lo menos dos (2) semanas; pérdida de interés en sus actividades normales; pérdida de concentración; fatiga; retardación sicomotora; dificultad para dormir; llanto frecuente; pensamientos suicidas. Exposición Narrativa de la Prueba Estipulada, pág. 11-12.

ocupacional, el tener que acudir al tribunal, los problemas que tiene con su esposo a causa del hostigamiento sexual, el hecho de que su madre tuvo que hacerse cargo de sus hijos y los problemas económicos que ha tenido que enfrentar.[16] Estas determinaciones de hechos demuestran que los actos de hostigamiento sexual del señor Orsini fueron la causa de los daños sufridos y probados por la recurrida.

Finalmente, la parte peticionaria alega que la cuantía de daños concedida por el Tribunal de Primera Instancia es exagerada. Reiteradamente hemos establecido que en la difícil y angustiosa función de estimación de daños, los tribunales de primera instancia están en una mejor posición que los tribunales apelativos debido a su contacto directo con la prueba. Por esta razón, este Tribunal se abstendrá de intervenir con la apreciación de la prueba y la determinación de daños que un tribunal de instancia haya emitido, a menos que las cuantías concedidas sean ridículamente bajas o exageradamente

---

[16] Los comentarios del informe pericial de la Dra. Ada Lizzie Delgado Mateo indican:

> Se considera que la situación de hostigamiento sexual que alega la Sra. Albino que sufrió en su trabajo y la cadena de eventos traumáticos a los que ha estado expuesta desde entonces (en su trabajo, en su vida cotidiana familiar-marital y económica, así como la exposición a un proceso legal que por su naturaleza resulta embarazoso para la paciente relatar una y otra vez lo ocurrido) han provocado un deterioro progresivo de su condición emocional.

En la exposición narrativa de la prueba estipulada la Dra. Ada Lizzie Delgado Mateo explica:

> Aunque Ada no esté físicamente en el trabajo, la situación continúa porque las 24 horas de su vida todos los días a partir de su situación, se siguió planteando el problema que ella tuvo en el trabajo, ya fuera por la vía legal, por su esposo o por el tratamiento. En el Fondo la está tratando un siquiatra y ella tiene que ventilar todo lo que ocurrió en ese trabajo. Aunque no esté físicamente en el trabajo, el extresor [sic] está ahí. Exposición Narrativa de la Prueba Estipulada, pág. 16.

altas. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451 (1985). Véase además, Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 327 (1990), Rodríguez Báez v. Nation Wide Insurance Company y otros, 2002 T.S.P.R. 52.

Sin embargo, en cuanto a la prueba pericial y documental, estamos en igual situación que los foros de instancia y tenemos la facultad de adoptar nuestro propio criterio respecto a ésta. Díaz García v. Aponte Aponte, 125 D.P.R. 1, 13 (1989). En este caso, la prueba pericial presentada por la señora Albino sustenta las determinaciones de daños hechas por el Tribunal de Primera Instancia. La parte peticionaria no presentó prueba pericial.

La parte que solicita a este Tribunal que se modifique una cuantía concedida en daños por el tribunal de instancia, tiene la obligación de demostrar la existencia de circunstancias que justifiquen dicha modificación. Rodríguez Cancel v. A.E.E., supra, 451-452. En este caso, como bien resolvió el anterior Tribunal de Circuito de Apelaciones, la parte peticionaria no presentó evidencia que refutara la prueba presentada por la señora Albino. Su argumento en alzada se limitó a alegar la ausencia de nexo causal entre los actos de hostigamiento y los daños que el tribunal encontró probados y, en la alternativa, la naturaleza excesiva de los daños. Meras alegaciones no son suficientes para mover nuestra facultad modificadora.

En este caso, el Tribunal de Primera Instancia determinó que los daños sufridos por la señora Albino a causa del hostigamiento sexual ascendían a un total de $75,000. Según la sanción establecida en el artículo 11 de la Ley núm. 17, los codemandados son responsables por una suma igual al doble del importe de daños sufridos. 29 L.P.R.A. sec. 155j. A base de los daños que el Tribunal de Primera Instancia estimó probados, de la prueba pericial presentada por la parte demandante y que la parte peticionaria no demostró la existencia de circunstancias que justifiquen la modificación de la cuantía, concluimos que la cuantía otorgada por el Tribunal de Primera Instancia no es exageradamente alta y que por tanto, no debe ser modificada.

V

Por todo lo anterior confirmamos la sentencia del anterior Tribunal de Circuito de Apelaciones en cuanto resolvió que la conducta del señor Orsini constituyó hostigamiento sexual en el empleo, que el señor Martínez, como presidente de la corporación peticionaria, Ángel Martínez, Inc., no tomó una acción apropiada para corregir la situación y que tanto el señor Orsini como la corporación peticionaria son responsables solidariamente por los daños y perjuicios sufridos por la recurrida.

Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ada Iris Albino Agosto
    Recurrida

       v.

Ángel Martínez, Inc. Ramón
Orsini
    Demandados

   Ángel Martínez, Inc.
    Peticionario

*Certiorari*

CC-2001-183

*SENTENCIA*

En San Juan, Puerto Rico, a 4 de junio de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma la sentencia del anterior Tribunal de Circuito de Apelaciones en cuanto resolvió que la conducta del Sr. Ramón Orsini constituyó hostigamiento sexual en el empleo, que el Sr. Ángel Martínez, como presidente de la corporación peticionaria, Ángel Martínez, Inc., no tomó una acción apropiada para corregir la situación y que tanto el señor Orsini como la corporación peticionaria son responsables solidariamente por los daños y perjuicios sufridos por la recurrida Ada Iris Albino Agosto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con opinión escrita. El Juez Asociado señor Rivera Pérez disiente con opinión escrita. El Juez Asociado señor Rebollo López no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ada Iris Albino Agosto

    Recurrida

      vs.

                                CC-2001-183

Certiorari

Ángel Martínez, Inc.,
Ramón Orsini
    Demandados

Ángel Martínez, Inc.
    Peticionario

Opinión Concurrente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 4 de junio de 2007.

Concurro con la mayoría del Tribunal en cuanto a que en el caso de autos medió hostigamiento sexual en el trabajo por uno de los co-empleados.

También concurro en cuanto a que el patrono no tomó una acción apropiada para corregir la situación de hostigamiento sexual sobre la cual fue alertado, por lo que responde en daños y perjuicios por su omisión.

Con lo que no estoy de acuerdo es con toda la discusión que aparece en la Opinión mayoritaria sobre la obligación del patrono en este caso a investigar si el hostigamiento sexual por un empleado suyo había continuado posteriormente.

Aunque no descarto que exista tal obligación en ciertas situaciones, estimo que verificaciones posteriores no hubiesen convertido las medidas impuestas en medidas adecuadas en relación a los actos de hostigamiento aquí ocurridos.

Me parece que esta parte de la Opinión mayoritaria debilita el dictamen primordial aquí, y saca de foco el asunto medular del caso. En mi criterio, al enfrentarse a las quejas de la recurrida, el patrono debió haber comenzado una investigación formal más allá de la versión del propio hostigador. Una vez verificado que, en efecto, éste había desplegado la conducta ilícita, el patrono debió **despedir al hostigador de inmediato**. Nótese que el hostigador aquí negó su conducta, cuando el patrono le inquirió sobre ello. El hostigador, pues, le mintió al patrono sobre los hechos. Nótese, además, que otra empleada también se había quejado de actos de hostigamiento por la misma persona. Frente a estas circunstancias, el patrono debió despedir al hostigador, tal como iba a hacer originalmente. Al no efectuar ese despido, asumió la responsabilidad por los actos de hostigamiento posteriores. Resuelto lo anterior, no es necesario dilucidar nada más.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ada Iris Albino Agosto

    Demandante Recurrida

         v.

                      CC-2001-183  *Certiorari*

Ángel Martínez, Inc.   Ramón Orsini

    Demandada Peticionaria



OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR RIVERA PÉREZ



San Juan, Puerto Rico, a 4 de junio de 2007.

Disentimos de la Mayoría, toda vez que no compartimos su criterio interpretativo en torno a la responsabilidad del patrono por actos de hostigamiento sexual <u>entre empleados</u>. Veamos.


I

El 20 de mayo de 1996, la señora Ada Albino Agosto, en adelante señora Albino, comenzó a trabajar como cajera en la tienda de ropa conocida por el nombre de "$19.95", en adelante $19.95, ubicada en Corozal. Dicha tienda era parte de una serie de establecimientos dedicados, entre otras cosas, a la venta de ropa de caballeros, pertenecientes a la corporación Ángel Martínez,

Inc., en adelante el patrono, cuyo presidente era el señor Ángel Martínez, en adelante señor Martínez.[17] En agosto de ese mismo año, la señora Albino fue ascendida al puesto de gerente de la tienda $19.95 de Corozal. Como parte de su función gerencial, la señora Albino supervisaba directamente a la señora María Bernard, en adelante señora Bernard, empleada de piso de la tienda de Corozal. El señor William Otero, en adelante señor Otero, era el supervisor directo de ambas, mientras que el señor Ramón Orsini, en adelante señor Orsini, fungía como contador de las operaciones comerciales del patrono. Aunque la señora Albino y el señor Orsini trabajaban para el mismo patrono, laboraban en tiendas distintas y distantes, pues este último tenía su oficina en la tienda $19.95 de Vega Baja.

Tal como lo estipularan las partes y a tenor con las determinaciones de hecho del foro primario, la señora Albino y el señor Orsini se comunicaban por teléfono frecuentemente y se veían aproximadamente **una (1) vez** al mes en reuniones de trabajo y otras actividades del patrono.[18]

Entre los meses de junio y julio de 1996, la señora Albino solicitó del patrono un adelanto de salario de $350 para costear unas pruebas médicas de su hija menor,

---

[17] Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice del recurso de *Certiorari*, págs. 34-63.

[18] Íd, a las págs. 35-38. La Opinión Mayoritaria indica no obstante, a la pág. 3, que el señor Orsini y la señora Albino se "veían en las reuniones mensuales de los gerentes de la corporación", **y luego indica que se veían semanalmente** por razón de que el señor Orsini "visitaba la tienda de Corozal al menos una vez a la semana." El que éstos se veían una vez a la semana no encuentra apoyo en las estipulaciones de las partes ni en las determinaciones de hecho del foro primario.

ordenadas, presumiblemente, a causa de un envenenamiento que alegadamente sufrió y por el que la señora Albino y su esposo presentaron una acción judicial en representación y beneficio de la referida menor.[19] El señor Orsini contestó la petición indicándole que el patrono no permitía el pago adelantado del salario, pero que él podía prestarle el dinero en su carácter personal. Así lo hizo. Posteriormente, la señora Albino tomó prestados otros $150 del señor Orsini para costear unos materiales escolares de su hija. Ambas deudas fueron saldadas por la señora Albino en febrero de 1997. En sus determinaciones de hecho, el Tribunal de Primera Instancia indicó que, en febrero de 1997, el señor Orsini le solicitó a la señora Albino que le pagara el dinero adeudado, pero que, ante esta situación, la señora Albino se molestó.[20]

---

[19] Surge del expediente que para el 25 de enero de 1996, la señora Albino y su esposo, el señor Pedro Martínez, en representación de su hija menor, presentaron la demanda número DDP96-0080 en el Tribunal de Primera Instancia, Sala Superior de Bayamón, contra las siguientes partes: Colmado Mini-Market, Best Foods-Caribbean, Inc. (Knorr) y ABC Insurance Co. Mediante la misma, alegaron que su hija se había envenenado al consumir una sopa de fideos que tenía gusanos. Reclamaron, conjuntamente, alrededor de $190,000 en daños y perjuicios por, entre otras cosas, "las angustias emocionales y mentales" causadas por el incidente. De esta partida, la señora Albino reclamó $60,000 por sus propias "angustias emocionales y mentales." Demanda, Apéndice del recurso de *Certiorari*, págs. 31-32; Exposición Narrativa de la Prueba Estipulada, Apéndice del recurso de *Certiorari*, pág. 344.

**Conviene indicar que, en ningún momento, la Opinión Mayoritaria hace mención de la existencia de la referida demanda, presentada <u>escasamente ocho (8) meses antes</u> de que ocurriera el primer acto de hostigamiento sexual del señor Orsini en la persona de la señora Albino.** No obstante, al igual que el foro primario y el Tribunal de Apelaciones, la Opinión de la Mayoría hace un extenso recuento de los **<u>daños</u>** sufridos por la señora Albino.

[20] Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice del recurso de *Certiorari*, pág. 39.

Tal como lo recoge las determinaciones de hecho del foro primario, luego de efectuados los referidos préstamos, la relación entre la señora Albino y el señor Orsini cambió. En agosto de 1996, con motivo de una reunión de ventas del patrono en el almacén $19.95 de Corozal, el señor Orsini le tocó las manos a la señora Albino, a la vez que le miraba los senos y abría los ojos como queriéndola tocar. Mientras esto ocurría, le hacía comentarios, tales como "qué bien te queda ese traje", a la vez que le indicaba que "tenía unas nalgas bonitas", todo esto mientras se tocaba sus partes genitales. De acuerdo a la prueba creída por el foro primario, esta conducta se repitió en 2 ó 3 ocasiones durante el mes de agosto de 1996.[21] Además, surge de las referidas determinaciones de hecho que en una ocasión, en una conversación telefónica, el señor Orsini le comentó a la señora Albino que él le podía "sobar las nalguitas", al ésta manifestarle que se "había caído" en la proyección de las ventas. Se desprende de las determinaciones, además, que en diversas ocasiones el señor Orsini le comentó a la señora Albino lo bien que le quedaban los vestidos que ésta utilizaba para el trabajo. No obstante, surge de la exposición narrativa de la prueba estipulada, concretamente del testimonio de la señora Bernard, que cuando el señor Orsini visitaba la tienda $19.95 de Corozal, éste le comentaba a la señora Bernard "usted está bien bonita", a lo que ella replicaba "usted está también guapo" y que cuando la señora Albino presenciaba este intercambio, le preguntaba al señor Orsini "¿ella nada más, y yo?, a lo

---

[21] Íd, a la pág. 39. Del expediente no surge si el segundo o tercer incidente ocurrió por la vía telefónica o en persona.

que el señor Orsini le respondía que ella también estaba bonita.[22]

El 19 de septiembre de 1996, luego de efectuada una reunión de gerentes en la oficina del señor Martínez en Vega Baja, la señora Albino le solicitó al señor Orsini la entrega de una mercancía que faltaba en la tienda de Corozal. Mientras estaban en la oficina del señor Orsini, éste le dijo en voz baja "quédate conmigo que estoy solo." La señora Albino se negó y le indicó que en su casa la esperaban su marido e hijos. Luego de que ocurriera este incidente, ese mismo día, el señor Orsini invitó a la señora Albino a que se fueran a pasar todo el día a Caguas, o a comer, mientras otra empleada se hacía cargo de la tienda. La señora Albino se negó y tomó estos comentarios como propuestas de carácter sexual.[23]

Surge de las determinaciones de hecho del foro primario que para esta época, o sea, durante el mes de septiembre de 1996, la señora Albino se sentía nerviosa y con mucha presión, temerosa de que el señor Orsini la tocara o le hiciera comentarios de índole sexual. Por tal motivo, la señora Albino rebajó de peso, comenzó a usar ropa más grande y tenía un aspecto demacrado. No obstante, con relación a la vestimenta de la señora Albino, surge de la exposición

---

[22] Exposición Narrativa de la Prueba Estipulada, Apéndice del recurso de *Certiorari*, pág. 368.

[23] Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice del recurso de *Certiorari*, págs. 40-41.

narrativa de la prueba estipulada, concretamente del testimonio de la señora Bernard, que cuando la señora Albino comenzó a trabajar en $19.95 en mayo de 1996, ésta vestía mahones, camisas de manga larga por fuera, ropa ancha y larga y que, a medida de que la señora Bernard y la señora Albino se hicieron amigas, esta última comenzó a vestirse como aquélla, con ropa más corta y entallada, utilizando faldas cortas los viernes. Según la señora Bernard, la señora Albino utilizó este tipo de ropa hasta el mes de marzo de 1997, fecha en que dejó de trabajar para el patrono.[24] Para esta misma época, la señora Bernard le contó a la señora Albino que el señor Orsini la llamaba a su casa, la invitaba a salir, diciéndole que ella no tenía que trabajar ya que él la podía mantener.

Surge de las determinaciones de hecho del foro primario que para el 16 ó 17 de octubre de 1996, la señora Albino le notificó a su supervisor, el señor Otero, el problema que, tanto ella como la señora Bernard, tenían con el señor Orsini, en cuanto a los piropos y acercamientos de naturaleza sexual que éste les hacía. Ese mismo día, el señor Otero notificó la situación al señor Martínez. Al día siguiente, durante una reunión de gerentes celebrada en Caguas, la señora Albino notificó una vez más, esta vez al señor Martínez, de la conducta hostigante del señor Orsini. Surge de la exposición narrativa de la prueba estipulada que

---

[24] Exposición Narrativa de la Prueba Estipulada, Apéndice del recurso de *Certiorari*, pág. 368-369. A pesar de que la Opinión Mayoritaria cita extensamente la exposición narrativa de la prueba estipulada, no incluye información como ésta que, a todas luces, es imprescindible para evaluar esta controversia bajo el prisma de la totalidad de las circunstancias.

luego de que comenzaran los actos de hostigamiento sexual del señor Orsini, la señora Albino le dio instrucciones a la señora Bernard de que anotara todo y llevara un récord de lo que aquél decía cuando visitaba la tienda $19.95 de Corozal, toda vez que eso, según el parecer de la señora Albino, constituía hostigamiento.[25]

Al enterarse de la situación, el señor Martínez reconoció y le manifestó a la señora Albino que se trataba de una situación preocupante y le preguntó si deseaba que despidiera al señor Orsini. Ésta le indicó que eso no le competía a ella, sino a él como dueño de la empresa. Le expresó que lo que ella quería era que cesara el hostigamiento y que el señor Orsini dejara de visitar la tienda de Corozal. Así las cosas, el señor Martínez le indicó que hablaría con el señor Orsini. Al día siguiente, el señor Martínez se reunió con las señoras Albino y Bernard para continuar la discusión del asunto. Surge de las determinaciones de hechos del Tribunal de Primera Instancia que el señor Martínez les comunicó a éstas que la conducta desplegada por el señor Orsini conllevaba su despido. Ante esta situación, la señora Albino le comunicó que ella no quería causarle daño al señor Orsini. Según se desprende de la Sentencia emitida por el Tribunal de Primera Instancia, el señor Martínez concluyó que lo relatado por sus dos (2) empleadas "era suficiente" y que constituía hostigamiento sexual.[26]

---

[25] Íd, a la pág. 368.

[26] Surge de las determinaciones de hecho del foro primario, concretamente la determinación número veintitrés (23) que, contrario a lo expresado por la señora Albino, a los

Así las cosas, el señor Martínez se reunió con su contable para relatarle lo que le habían manifestado las empleadas, procediendo a pedirle la renuncia. Según determinó el foro primario, el señor Orsini, luego de "ponerse colorado", negó que hubieran ocurrido los actos de hostigamiento, razón por la cual decidió no renunciar. El señor Martínez le comunicó que investigaría sobre el particular.[27]

Como consecuencia de las quejas de la señora Albino y la señora Bernard, el señor Martínez dio instrucciones a su secretaria personal, señora Sonia Cruz, en adelante señora Cruz, y al propio señor Orsini, para que se canalizaran los trabajos, así como las llamadas telefónicas entre las tiendas de Vega Baja y Corozal, a través de la señora Cruz o del propio señor Martínez. Esto para evitar el contacto entre la presunta víctima y su victimario. El señor Orsini aceptó estas instrucciones.[28]

Surge de la prueba creída por el foro primario que para fines de octubre y parte de noviembre de 1996, tal como solicitara la señora Albino, el señor Orsini dejó de visitar la tienda de Corozal. No obstante, a finales del mes de noviembre de dicho año, la propia señora Albino, en calidad de gerente de la tienda $19.95 de Corozal, invitó al señor

---

efectos de que la señora Bernard la acompañó al Departamento del Trabajo para también querellarse de la conducta sexual del señor Orsini, ésta acudió a dicho Departamento para quejarse de una notificación de suspensión que le cursara el señor Otero. Apéndice del recurso de *Certiorari*, pág. 44.

[27] Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice del recurso de *Certiorari*, págs. 43-45.

[28] Íd, a la pág. 46.

Orsini a un almuerzo de Acción de Gracias, celebrado en esa tienda. Fue alrededor de esa fecha que las conversaciones telefónicas entre ambos se reanudaron.

Asimismo, surge de las determinaciones de hecho del Tribunal de Primera Instancia, que, además de la invitación a la referida actividad, la señora Albino invitó al señor Orsini y al señor Martínez a la fiesta de cumpleaños de su hijo.[29] Inclusive, surge de la prueba creída por el foro primario, que dos (2) meses después de que la señora Albino se querellara de la conducta del señor Orsini, en diciembre de 1996, el señor Otero la observó riéndose mientras hablaba por teléfono con aquél. Como consecuencia de esto, el señor Otero le comunicó a la señora Albino lo siguiente: **"no cuques el avispero después de lo que ha pasado."**

El señor Otero le informó al señor Martínez de este incidente, y este último manifestó que iba a dialogar con el señor Orsini. Sobre el particular, le hizo llegar un mensaje a la señora Albino, a través del propio señor Otero, al efecto de que **"cortaran la relación"**.[30]

Finalmente, surge de las determinaciones de hecho del Tribunal de Primera de Instancia que, en enero de 1997, la señora Albino, como parte de un intercambio de regalos entre empleados, efectuado en una fiesta de Navidad, donde éstos se hacían bromas y travesuras, le regaló al señor Martínez dos (2) muñequitos que estaban desnudos, uno de los cuales mostraba los genitales y tenía el dedo del corazón apuntando

---

[29] Íd, a la pág. 48.

[30] Íd, a la pág. 51.

hacía arriba, mientras que el otro estaba "limpiándose con la lengua por fuera."[31]

Del cuadro fáctico expuesto se desprende que la señora Albino, efectivamente, presentó una queja contra el señor Orsini, ante su supervisor, el señor Otero, y directamente ante el señor Martínez. Surge, además, que posterior a la presentación de la queja, el patrono **tomó medidas para que el señor Orsini no visitara la tienda de Corozal, así como para que los trabajos de dicha tienda se canalizaran a través de la señora Cruz o, en su defecto, directamente con el señor Martínez**. No fue sino hasta que <u>**la señora Albino**</u> <u>**invitó al señor Orsini**</u> a la tienda $19.95 de Corozal para un almuerzo de Acción de Gracias, luego **al cumpleaños de su hijo**, y luego de que la **vieran riéndose mientras conversaba con éste**, que éstos tomaron una actitud similar a la que existía antes de la presentación de la queja de hostigamiento sexual.

Ante todos estos eventos, debemos preguntarnos lo siguiente: Para los meses de noviembre y diciembre de 1996 ¿estaba el patrono en posición de colegir que la relación entre la señora Albino y el señor Orsini era una de víctima y hostigador? ¿Tenía el patrono razones o motivos para dudar de la efectividad de la medida correctiva y cautelar empleada para evitar el contacto entre la señora Albino y el señor Orsini? Más allá, debemos preguntarnos si, ante la <u>totalidad de las circunstancias</u>, el patrono podía concluir que las relaciones laborales entre la señora Albino y el señor Orsini se habían normalizado. Finalmente, **debemos preguntarnos si la señora Albino debió informar al patrono**

---

[31] Íd, a la pág. 49.

**que el señor Orsini había reanudado su conducta de avances sexuales, alegadamente no deseados.**

Tal parece que ni el foro primario, ni el Tribunal de Apelaciones, ni la Opinión Mayoritaria toman en consideración la totalidad del cuadro fáctico a la hora de adjudicar responsabilidad al patrono.

Surge, además, de las determinaciones de hecho del Tribunal de Primera Instancia que para el <u>26 ó 27 de diciembre de 1996</u>, después de que la señora Albino invitara al señor Orsini, no sólo a la tienda de Corozal, sino al cumpleaños de su hijo, y luego de que la vieran riéndose con éste, el señor Martínez instruyó al señor Orsini para que visitara la tienda de Corozal para atender <u>un descuadre</u>, esto como parte de sus funciones como contable del patrono. En tal ocasión, el señor Orsini intentó besar a la señora Albino.[32]  <u>Del expediente no surge que la señora Albino informara al patrono sobre este incidente</u>.

El 14 de marzo de 1997, la señora Albino presentó una demanda contra el patrono y el señor Orsini. Mediante la misma, alegó, entre otras cosas, que la conducta del señor Orsini era constitutiva de hostigamiento sexual en el empleo y que el patrono era solidariamente responsable por los actos de aquél, toda vez que no había tomado medidas apropiadas y afirmativas para detener el mismo. Solicitó se le compensara por los daños y perjuicios sufridos como consecuencia de dicho hostigamiento.

El 7 de agosto de 1998, el Tribunal de Primera Instancia, determinó que el señor Orsini incurrió en hostigamiento sexual en su modalidad de ambiente hostil y

que el patrono no llevó a cabo una <u>acción apropiada para corregir la situación</u>. Impuso responsabilidad solidaria al patrono y al señor Orsini, determinando que los daños y perjuicios sufridos por la señora Albino ascienden a la suma de $75,000, la cual se duplica por mandato estatutario. Además, el foro primario le impuso a los codemandados el pago solidario de $18,750 por concepto de las costas del litigio y honorarios de abogado.

Inconformes, los demandados acudieron ante el Tribunal de Apelaciones. El foro intermedio apelativo confirmó la Sentencia del Tribunal de Primera Instancia.

El 9 de marzo de 2001, el patrono, aquí peticionario, solicitó nuestra intervención mediante petición de *Certiorari*, la cual fue acogida en una segunda moción de reconsideración. Señaló, entre otras cosas, que el Tribunal de Apelaciones erró al no revocar la determinación del foro primario que le impone responsabilidad por los actos de hostigamiento sexual del señor Orsini, alegados por la señora Albino, y que le obliga a pagar una "exagerada" cantidad por concepto de daños y perjuicios. Intima, además, que la determinación del foro intermedio apelativo no está sustentada por las determinaciones de hecho del foro primario. Esboza que la sentencia en cuestión tiene el efecto de imponer responsabilidad absoluta al patrono en casos de hostigamiento sexual <u>entre empleados</u>, relevando a la víctima de su obligación de notificar al patrono sobre dichos actos. Veamos.

## II

Hace casi dos décadas, la Asamblea Legislativa de Puerto Rico declaró como política pública que el

---

[32] Íd, a la págs. 48-49.

hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo que atenta contra el principio de la inviolabilidad de la dignidad humana.[33]  Por tal razón, se aprobó la Ley Núm. 17 de 22 de abril de 1988, en adelante Ley Núm. 17, que prohíbe el hostigamiento sexual en el empleo, impone responsabilidades y fija penalidades por su ocurrencia.[34]

Dicha legislación define el hostigamiento sexual en el empleo de la manera siguiente:

El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual **no deseado**, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:

(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo **intimidante, hostil u ofensivo**. (Énfasis suplido).[35]

Es conocido que el hostigamiento sexual en el empleo tiene dos modalidades.  Por un lado, los incisos (a) y (b)

---

[33] Exposición de Motivos de la Ley Núm. 17 de 22 de abril de 1988, Leyes de Puerto Rico, pág. 80.

[34] 29 L.P.R.A. sec. 155 *et seq*.  Conviene reseñar que esta pieza legislativa fue enmendada por la Ley Núm. 252 de 30 de noviembre de 2006, mediante la cual se le añadió a la sección 155(b) la modalidad de hostigamiento sexual por medios electrónicos, virtuales y/o mediante el uso de herramientas de multimedios a través de la red cibernética.

[35] Íd, sec. 155(b).

de la Ley Núm. 17 se refieren a la modalidad de hostigamiento equivalente o *quid pro quo*, mientras que el inciso (c) se refiere al hostigamiento sexual en su modalidad de ambiente hostil.[36]

Hemos determinado que el hostigamiento sexual en su modalidad de ambiente hostil, envuelve conducta de naturaleza sexual por parte del hostigador, que interfiere irrazonablemente con el desempeño del empleado en su trabajo, o que es lo suficientemente severa y ofensiva como para crearle un ambiente de trabajo intimidante, hostil y ofensivo.[37]

La Ley Núm. 17 dispone, entre otras cosas, que para hacer una determinación de hostigamiento sexual en el empleo se debe considerar la totalidad de las circunstancias en que ocurrieron los hechos. La ley requiere que la determinación de la legalidad de una conducta se haga basada en los hechos de cada caso en particular.[38] Para evaluar una demanda de hostigamiento sexual en su modalidad de ambiente hostil es imprescindible que el juzgador de los hechos tome en cuenta el impacto que sobre el reclamante ha tenido el marco total del ambiente en que se ha desarrollado el proceso de la actuación discriminatoria.[39]

Hemos resuelto que para atender reclamaciones de esta índole, conforme al estándar de la totalidad de las

---

[36] S.L.G. Afanador v. Roger Electric Co, Inc., 156 D.P.R. 651 (2002) citando a Rodríguez Meléndez v. Sup. Amigo, 126 D.P.R. 117 (1990).

[37] Íd.

[38] 29 L.P.R.A. sec. 155(c).

[39] Ortega Vélez, Ruth, *Hostigamiento Sexual en el Empleo*, San Juan, Ed. Cisco, 2005, pág. 71.

circunstancias, debemos examinar factores como la naturaleza de la conducta alegada, su frecuencia e intensidad, el contexto en el que ocurre, su duración y la conducta y circunstancias personales de la alegada víctima.[40]

La Ley Núm. 17 dispone el tipo de responsabilidad, si alguna, que recae sobre el patrono por los actos de hostigamiento sexual en el empleo. La referida legislación distingue entre dos (2) tipos de responsabilidad patronal: (1) cuando los actos de hostigamiento sexual son cometidos por el patrono, sus agentes y/o supervisores y (2) cuando los mismos ocurren entre empleados.

En el primero de los casos, cuando el victimario es el patrono, sus supervisores o agentes, dicha pieza legislativa preceptúa, en su parte pertinente, de la manera siguiente:

> Un patrono será responsable de incurrir en hostigamiento sexual en el empleo por sus actuaciones y las actuaciones de sus agentes o supervisores, **independientemente** de si los actos específicos objeto de controversia fueron autorizados o prohibidos por el patrono e **independientemente** de si el patrono sabía o debía estar enterado de dicha conducta.
> Se examinará la relación de empleo en particular a los fines de determinar si la persona que cometió los actos de hostigamiento sexual actuó en su capacidad de agente o supervisor del patrono. (Énfasis suplido).[41]

Por otro lado, cuando se trata de actos de hostigamiento sexual entre empleados del patrono, la Ley Núm. 17 reza de la forma siguiente:

> Un patrono será responsable por los actos de hostigamiento sexual entre empleados en el lugar de trabajo si el patrono o sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta, **a menos** que el

---

[40] Rodríguez Meléndez v. Sup. Amigo, *supra*. Véase además, *In re:* Robles Sanabria, 151 D.P.R. 483 (2000).

[41] 29 L.P.R.A. Sec. 155(d).

patrono pruebe que tomó una <u>acción inmediata
y apropiada</u> para corregir la situación.
(Énfasis suplido).[42]

Se colige de lo anterior que, como paso previo a la determinación de que el patrono responde por los actos de hostigamiento sexual acaecidos en el taller de trabajo, se debe atender cuál es <u>la relación laboral entre la víctima y el presunto hostigador</u>. Esto es así, toda vez que la referida legislación <u>distingue</u> entre actos de hostigamiento sexual acaecidos entre el patrono, sus agentes o supervisores y un empleado de los actos de hostigamiento sexual ocurridos <u>entre empleados</u>.

Esto contrasta con lo expresado por la Mayoría, a los efectos de que aplica una **<u>norma similar</u>** de responsabilidad patronal entre los actos de hostigamiento sexual cometidos por el patrono, sus supervisores o agentes y aquellos actos de hostigamiento sexual ocurridos entre empleados.[43]

Este asunto es medular para dirimir la controversia de epígrafe, toda vez que cuando se trata de actos de hostigamiento sexual ocurridos <u>entre empleados</u>, el patrono no es responsable si demuestra: 1) que ni él, ni sus agentes o supervisores <u>sabían o debían saber de dichos actos</u> y 2) que estando al tanto de los mismos, tomó medidas inmediatas y apropiadas para corregir la situación. <u>Claramente no aplica una norma similar</u>.

---

[42] Íd, Sec. 155(e).

[43] Véase la expression del Tribunal Supremo de Estados Unidos en <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998), a los efectos de: "…courts have consistently held that acts of supervisors have greater power to alter the environment than acts of co-employees in general."

El estándar o escrutinio cuando el hostigamiento sexual ocurre entre el patrono, sus agentes o supervisores y un empleado, es uno de responsabilidad absoluta que no permite defensas afirmativas; de ahí el uso del vocablo independientemente en la sección 155(d), mas no en la sección 155(e) de la Ley Núm. 17.

Tal como lo recogen las determinaciones de hecho del foro primario y la exposición narrativa de la prueba, no cabe duda de que la relación laboral existente entre la señora Albino y el señor Orsini era una de co-empleados.

Por otro lado, surge palmariamente del historial legislativo de la Ley Núm. 17 que ésta tuvo su génesis en el Título VII de la Ley de Derechos Civiles de 1964 del Congreso federal, y en pronunciamientos del Tribunal Supremo de los Estados Unidos, así como de foros federales de inferior jerarquía, referentes a la prohibición de discriminar en el empleo por razón de sexo.[44] De ahí que

---

[44] 42 U.S.C.A. Sec. 2000 et. seq. Véase la Exposición de Motivos de la Ley Núm. 17 donde se expresa lo siguiente: "El Congreso de Estados Unidos ha legislado para prohibir el discrimen por razón de sexo en el empleo y el Tribunal Supremo de Estados Unidos, mediante interpretación judicial…" Véase, además, las expresiones de la doctora Ruth Ortega Vélez, referente a **la similitud entre la ley federal y la ley local en materia de hostigamiento sexual en el empleo.** A esos efectos, la referida tratadista expresa lo siguiente:

"la legislación estatal y la federal son similares en su contenido. Pero, la jurisprudencia emitida en los tribunales de Estados Unidos, interpretando el Título VII es mucho más numerosa y abarcadora que la proveniente del Tribunal Supremo de Puerto Rico. De ahí que, continuamente, se citen los casos resueltos por el Tribunal Supremo Federal como una guía para la interpretación de las disposiciones antidiscrimen que rigen en Puerto

para atender controversias sobre hostigamiento sexual en el empleo, la jurisprudencia del Más Alto Foro federal, así como la casuística de los tribunales federales de inferior jerarquía tienen gran valor persuasivo.  Así lo demuestra la jurisprudencia de esta Curia.[45]

Conviene repasar algunos de los pronunciamientos de los tribunales federales en cuanto a la <u>responsabilidad patronal, así como los deberes de la víctima</u>, cuando ocurren actos de hostigamiento sexual en el lugar de trabajo.  Veamos.

En 1998, el Tribunal Supremo federal resolvió dos casos relativos a la responsabilidad del patrono por actos de hostigamiento sexual en el empleo.  <u>Faragher  v. City of Boca Raton</u>, *supra*; <u>Burlington Industries v. Ellerth</u>, 524 U.S. 742 (1998).  En ambos casos, analizados bajo el prisma de la responsabilidad vicaria y la teoría de la agencia, el Alto Foro federal razonó que el patrono dispone de <u>defensas afirmativas</u> ante reclamaciones por actos de hostigamiento sexual cometidos por un supervisor contra un supervisado.  El referido Tribunal <u>distingue entre actos cometidos por supervisores y aquellos cometidos por otros empleados</u> para, esencialmente, analizar si, como consecuencia del

---

Rico." (Énfasis suplido). Ortega Vélez, Ruth, *Hostigamiento Sexual en el Empleo*, *supra*, págs. 36-37.

[45] Véase a manera de ejemplo: <u>Rodríguez Meléndez v. Sup. Amigo</u>, *supra*; <u>*In re:* Robles Sanabria</u>, *supra*; <u>S.L.G. Afanador v. Roger Electric Co, Inc.</u>, *supra*; <u>López Vicil v. ITT Intermedia, Inc.</u>, 142 D.P.R. 857 (1997), entre otros. En todos estos casos hemos citado jurisprudencia y casuística federal para resolver controversias referentes a discrimen por razón de sexo, así como por hostigamiento sexual en el empleo.

hostigamiento sexual, le han sido afectados beneficios tangibles en el empleo a la víctima.[46]

En ambos casos, dicho Tribunal se expresó de la manera siguiente:

> "An employer is subject to vicarious liability to a victimized employee for an actionable <u>hostile environment</u> created by a supervisor with immediate (or successively higher) authority over the employee. When <u>no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages</u>, subject to proof by preponderance of the evidence (citas omitidas). The defense comprises two necessary elements: (a) <u>that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior</u>, and (b) that the <u>plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise</u>."
> (Énfasis suplido).

En <u>Burlington Industries</u>, *supra*, el Tribunal Supremo federal indicó, además, que en la medida en que la víctima <u>notifique</u> al patrono sobre la conducta de hostigamiento sexual se cumple con la intención legislativa del Congreso federal de promover la conciliación en lugar de la litigación. A esos fines, el referido Foro expresó lo siguiente:

> "For example, Title VII is designed to encourage the creation of antiharassment policies and effective grievance mechanisms.

---

[46] Este término se conoce en inglés como *tangible employment action*. En <u>Burlington Industries</u>, *supra*, el Tribunal Supremo federal expresó lo siguiente: "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Conviene resaltar, además, que en dicho caso, el Más Alto Foro federal expresó lo siguiente: "A tangible employment action in most cases inflicts direct economic harm. As a general proposition, <u>only a supervisor</u>, or other person acting with the authority of the company, can cause this sort of harm." (Énfasis suplido).

> Were employer liability to depend in part on an employer's effort to create such procedures, it would effect Congress' intention to promote conciliation rather than litigation. (Citas omitidas)… <u>To the extent limiting employer liability could encourage employees to report harassing conduct before it becomes severe or pervasive</u>." (Énfasis suplido).[47]

Asimismo, el Tribunal Supremo federal se ha expresado sobre <u>el deber que tiene la víctima</u> de utilizar, oportunamente, los mecanismos provistos por el patrono para ponerle fin a los actos de hostigamiento sexual. A esos efectos, dicho Tribunal expresó en <u>Faragher</u>, *supra*, lo siguiente:

> "An employer may, for example, have provided a proven, effective mechanism for reporting sexual harassment, available to the employee without undue risk or expense. <u>If the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so</u>. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, <u>and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided</u>." (Énfasis suplido).[48]

A tenor con la discusión que antecede, la víctima tiene la obligación de mantener informado al patrono sobre los actos de hostigamiento sexual sufridos para que éste pueda tomar las medidas correctivas a tiempo. Conviene destacar que en este tipo de controversias se debe considerar la <u>razonabilidad</u> con la que ha actuado, <u>tanto el patrono como</u>

---

[47] Con relación a este particular, la doctora Ruth E. Ortega expresa lo siguiente: "Una reclamación ante el patrono, a tiempo, es una invitación para que proceda a resolver el problema rápidamente y evitar la acción ante el tribunal." Ortega Vélez, Ruth, *Hostigamiento Sexual en el Empleo*, *supra*, a la pág. 76.

[48] <u>Faragher v. City of Boca Raton</u>, *supra*.

la víctima, para ponerle fin a los actos de hostigamiento sexual. En Faragher, *supra*, el Más Alto Foro federal expresó lo siguiente:

> "The other basic alternative to automatic liability would avoid this particular temptation to litigate, but allow an employer to show as an affirmative defense to liability that the employer had exercised reasonable care to avoid harassment and to prevent it when it might occur, and that the complaining employee had failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided. This composite defense would, we think, implement the statute sensibly." (Énfasis suplido).

No compartimos la conclusión de la Mayoría a los efectos de que el patrono debe estar constantemente indagando si los actos de hostigamiento sexual entre empleados, originalmente atendidos y, a su mejor entender, resueltos, se han reanudado. Máxime cuando, como en este caso, las acciones de la señora Albino, posteriores a su querella verbal de hostigamiento, de invitar al señor Orsini a la tienda $19.95 de Corozal, al cumpleaños de su hijo, de regalarle al señor Martínez unos muñequitos desnudos, y de ser vista riéndose mientras hablaba por teléfono con su presunto victimario, no pusieron al patrono en posición de conocer, anticipar o prever que la relación laboral entre la señora Albino y el señor Orsini seguía siendo una de víctima y hostigador.

Asimismo, la señora Albino no notificó al patrono del incidente, también posterior a su querella, ocurrido el 26 ó 27 de diciembre de 1996, en el cual el señor Orsini, luego de una reunión de gerentes, le intentó besar. La señora Albino tenía conocimiento de que inmediatamente después de querellarse, el patrono tomó medidas para que, tal como ella

solicitara, el señor Orsini dejara de visitar la tienda de Corozal.

Es pertinente destacar que en todo momento el señor Orsini negó los hechos de hostigamiento sexual y que, a pesar de ello, el patrono tomó medidas para evitar que la señora Albino y el señor Orsini tuvieran cualquier tipo de contacto personal y/o telefónico. Como cuestión de hecho, el contacto entre ambos fue inexistente por espacio de un mes. Se reanudó cuando la propia señora Albino invitó al señor Orsini a una actividad de Acción de Gracias en la tienda $19.95 de Corozal.

Conviene repasar algunos pronunciamientos de los tribunales federales, a nivel de Distrito y Apelación, toda vez que éstos delinean con mayor precisión la responsabilidad del patrono por actos de hostigamiento sexual en el empleo. Dichos pronunciamientos, además, claramente distinguen la responsabilidad patronal por actos de hostigamiento sexual ocurridos entre el patrono, un supervisor o agente, de aquellos casos en que los actos de hostigamiento sexual ocurren entre empleados. Veamos.

El Tribunal de Apelaciones, Primer Circuito federal, atendiendo una controversia sobre hostigamiento sexual en el empleo, en su modalidad de ambiente hostil, distinguió entre actos de hostigamiento sexual cometidos por supervisores de aquéllos que ocurren entre empleados. El referido foro se expresó de la manera siguiente:

> "Proving employer liability <u>depends in the first instance upon whether the alleged harassment is caused by a co-employee of the victim or the supervisor</u>. If the harassment is caused by a **co-employee**, the employer is liable if <u>it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action."</u> (Citas omitidas)… If the offender is a supervisor, the

employer is liable unless it proves the affirmative defense "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and… that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[49] (Énfasis suplido).

Hace cuatro años, el Tribunal de Apelaciones, Primer Circuito federal, tuvo la oportunidad de expresarse sobre la importancia de que la víctima notifique al patrono de los actos de hostigamiento sexual para determinar si procede imponerle responsabilidad al patrono. A esos fines, el referido tribunal expresó lo siguiente:

"There is no bright-line rule as to when a failure to file a complaint becomes unreasonable, but *Faragher*,[*supra*] and *Ellerth*, [*supra*], do provide some indirect guidance. Reporting sexually offensive conduct by a supervisor would for many or most employees be uncomfortable, scary or both. **But because this will often or ordinarily be true, as the Supreme Court certainly knew, its regime necessarily requires the employee in normal circumstances to make this painful effort** *if the employee wants*

---

[49] White v. New Hampshire Department of Corrections, 221 F. 3d 254 (1st Cir. 2000). Esta interpretación fue posteriormente reiterada por el Tribunal de Apelaciones, Primer Circuito federal, en Crowley v. L.L. Bean, Inc., 303 F. 3d 387 (1st Cir. 2002) donde el referido foro expresó lo siguiente:
A plaintiff must satisfy **different standards** for establishing employer liability in a hostile work environment case depending on whether the harasser is a supervisor or co-employee of the victim. In this case, it is beyond dispute that Juhl and Crowley were co-employees. To establish employer liability for a non-supervisory co-employee, a plaintiff must demonstrate that the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." (Énfasis suplido).

*to impose vicarious liability on the employer and collect damages under Title VII."*[50]

Asimismo, en dicho caso, el referido foro apelativo expresó lo siguiente:

> "The complaint mechanism, after all, can be used to address threats of retaliation as well as harassment, **and unless patently futile**, concerns as to whether the complaint mechanism will fail can only be tested by trying it out if failure is the only cost." (Énfasis añadido).

En el 2001, el Tribunal de Apelaciones, Quinto Circuito federal, atendiendo una controversia sobre hostigamiento sexual entre empleados, en su modalidad de ambiente hostil, se expresó sobre la importancia de que la víctima mantenga informado al patrono sobre los actos de hostigamiento sexual acaecidos en el taller de trabajo. Expresó que el patrono **no es responsable cuando no tiene conocimiento de la conducta sexual discriminatoria, o de que la misma se ha reanudado, luego de realizada una investigación que tuvo el efecto de corregir el referido ambiente hostil**. A esos efectos, dicho tribunal apelativo expresó lo siguiente:

> "Because we view the facts in the light most favorable to Woods, we assume that Eddy continued to harass Woods after the July 7 meeting. **Even so, Delta beverages cannot be held liable for conduct of which it had no knowledge**. Woods had the obligation to report the alleged harassment to Delta Beverage as she had been instructed."[51] (Énfasis suplido).

---

[50] Reed v. MBNA Marketing Systems, Inc., 333 F. 3d 27 (1st Cir. 2003) citando a Matvia v. Bald Head Island Mgmt., Inc, 259 F. 3d 261 (4th Cir. 2001). Si bien en Reed los actos de hostigamiento sexual fueron cometidos por un supervisor, dicho caso es ilustrativo a la controversia de marras, toda vez que versa, esencialmente, sobre el deber de notificación que tiene la víctima para que el patrono tome acciones correctivas.

[51] Woods v. Delta Beverage Group, Inc. 274 F. 3d 295 (5th Cir. 2001). En un escolio, el foro en cuestión expresó lo

Es pertinente destacar las expresiones que hiciera el Tribunal de Apelaciones, Undécimo Circuito federal, en un caso de hostigamiento sexual, en su modalidad de ambiente hostil, sobre la importancia de que la víctima del hostigamiento le comunique al patrono de los actos de hostigamiento sexual para que éste pueda tomar medidas correctivas apropiadas. El referido tribunal expresó lo siguiente:

> "We are not unmindful of the enormous difficulties involved in lodging complaints about discrimination in the workplace, including complaints of sexual harassment. We also recognize the great psychological burden it places on one who is already the victim of harassment to require that person to complicate further his or her life with the ramifications, both legal and otherwise, of making a complaint. Federal law has now attempted to correct the problem of workplace discrimination, **but it cannot be done without the cooperation of the victims, notwithstanding that it may be difficult for them to make such efforts**. When an employer has taken steps, such as promulgating a considered sexual harassment policy, to prevent sexual harassment in the workplace, **an employee must provide adequate notice that the employer's directives have been breached so that the employer**

---

siguiente: "To avoid further harm after July 7, Woods needed to reasonably take advantage of the corrective opportunities provided by her employer. Woods cannot have expected Delta Beverage to solve her problem when it had no knowledge that she continued to suffer harassment." (Énfasis suplido) Si bien en el caso de marras, la señora Albino no fue notificada por el patrono de su deber de mantenerlo informado de la conducta del señor Orsini, surge palmariamente de la exposición narrativa de la prueba que luego de que el señor Orsini intentara besarla, ésta no informó ni al señor Otero, ni al señor Martínez sobre dicho incidente. Exposición Narrativa de la Prueba estipulada, Apéndice del recurso de *Certiorari*, pág. 340. Surge, además, de las determinaciones de hecho que hiciera el foro primario que la comunicación entre la señora Albino y el señor Martínez era buena, toda vez que conversaban sobre asuntos laborales, así como personales. Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice del recurso de *Certiorari*, pág. 49.

**has the opportunity to correct the problem**."[52]
(Énfasis suplido).

Finalmente, conviene destacar que hace escasamente un mes, el Tribunal Federal de Distrito, Distrito de Alabama, resolvió un caso similar al de marras, donde una empleada demandó a su patrono alegando hostigamiento sexual en el empleo, en su modalidad de ambiente hostil, por actos de otro empleado.[53]

Éste versaba, esencialmente, sobre las medidas que tomó el patrono contra el hostigador, una vez se le informó de la conducta sexual discriminatoria. El tribunal determinó que la medida tomada por el patrono fue una razonable al separar a la víctima de su presunto hostigador para así evitar el contacto entre éstos. A esos efectos, dicho foro expresó lo siguiente:

> "The record reflects that upon notification to management of the allegations, Smurfit conducted an investigation into plaintiff's complaints, interviewed witnesses, warned Godwin of the consequences of any further incidents and placed

---

[52] Coates v. Sundor Brands, Inc., 164 F. 3d 1361 (11th Cir. 1999). Este lenguaje se reiteró en Hansen II v. Perry Technologies, 206 F. Supp. 2d 1223 (2002).

[53] En este caso, una mujer de treinta tres (33) años y de raza negra presentó una demanda contra su patrono por los actos de hostigamiento sexual de otro empleado. La demandante alegó, en esencia, que dicho empleado le ofreció dinero a cambio de sexo, así como que en una ocasión le comentó que le gustaba tener sexo con mujeres de la raza negra. Alegó, además, que éste le manifestó que podía mantenerla siempre y cuando ella fuera buena y no tuviera relaciones sexuales con otras personas, entre otras cosas. Conviene destacar que en dicho caso, el empleado demandado había trabajado para el patrono por casi cuarenta (40) años sin que se hubieran presentado quejas de naturaleza sexual en su contra. En dicho caso, el presunto hostigador, al igual que en el caso de marras, le negó al patrono la ocurrencia de la conducta sexual discriminatoria cuando le inquirió sobre dicho asunto.

him on a five day suspension…Thus, the five day suspension, <u>and moving plaintiff to another shift to ensure that the two had no further contact, was reasonable under the circumstances</u>."[54] (Énfasis suplido).

Concluimos que para determinar si un patrono responde por los actos de hostigamiento sexual de un empleado, es <u>imperativo distinguir si los referidos actos ocurrieron entre un supervisor y un empleado o si los mismos se dieron entre co-empleados</u>. En segundo lugar, cuando se determina que los actos de hostigamiento se dieron <u>entre empleados</u>, el patrono será responsable <u>si sabía o debía haber sabido de dicha conducta y dejó de tomar medidas correctivas apropiadas para detener el hostigamiento</u>. Tercero, cuando el patrono no sabe <u>o no tiene forma de saber</u> que existe una conducta de hostigamiento sexual en curso entre co- empleados, <u>la víctima tiene la obligación de notificarla al patrono a fin de ponerlo en posición de tomar medidas correctivas</u>. En cuarto lugar, para determinar que el patrono es responsable en este tipo de controversias es imprescindible <u>analizar la razonabilidad</u> de sus actuaciones para detener el hostigamiento una vez adviene en su conocimiento.

Diferimos de la conclusión a la que llega la Mayoría en el sentido de que en el caso de marras el patrono no tomó medidas <u>inmediatas y apropiadas</u> para detener los actos de hostigamiento sexual del señor Orsini.

Se desprende de la relación fáctica esbozada que <u>inmediatamente</u> después de que el patrono se enterara, por voz de la propia señora Albino, de los actos de

---

[54] <u>Burroughs v. Smurfit Stone Container Corporation, LP</u>, 2007 WL 778479, resuelto el 12 de marzo de 2007.

hostigamiento sexual del señor Orsini, decidió iniciar una investigación para inquirir sobre el asunto. Celebró una segunda reunión, al día siguiente de la queja, con la señora Albino y con la señora Bernard, para recibir el insumo de éstas en cuanto a la alegada conducta sexual del señor Orsini.[55] Como parte de la referida investigación, además, el patrono se reunió con el señor Orsini para inquirirle sobre las reclamaciones de la señora Albino. Conviene destacar que en dicha reunión el patrono le pidió la renuncia, a lo que, a renglón seguido, el señor Orsini negó la ocurrencia del hostigamiento sexual. No obstante, el patrono tomó medidas para canalizar los trabajos entre sus tiendas de Vega Baja y Corozal a través de terceras personas, con el objetivo de evitar el contacto entre la señora Albino y el señor Orsini. Dicha medida fue apropiada, pues el señor Orsini dejó de visitar la tienda de Corozal por espacio de un mes. La medida estuvo en vigor hasta que la propia señora Albino la infringió invitando al señor Orsini a una actividad en la tienda $19.95 de Corozal.

Contrario a lo que expresa la Mayoría, la medida tomada por el patrono para corregir la situación entre sus empleados no sólo fue una inmediata, sino que fue apropiada y razonable ante el cuadro fáctico que tenía ante sí. Nótese que la víctima y el victimario le ofrecieron versiones distintas y controvertidas sobre los hechos. Adviértase, además, que éstos trabajaban en lugares distintos, Corozal y Vega Baja, respectivamente.

---

[55] Conviene recalcar que luego de esta reunión, el patrono determinó que la conducta desplegada por el señor Orsini conllevaba el despido y así se lo informó a la señora Albino, solicitándole su parecer al respecto.

Conviene resaltar que el patrono tenía en vigor un manual de normas y procedimientos que le concedía la potestad de tomar la <u>acción correctiva que entendiera necesaria</u> en aquellos casos en que un empleado suyo alegara ser víctima de hostigamiento sexual.[56] Consideramos, que, en efecto, tomó la acción correctiva apropiada y necesaria.

Por otra parte, es preciso particularizar y reiterar que, sabiendo de las medidas tomadas por el patrono en una ocasión anterior, así como de la efectividad de la misma, la señora Albino <u>no le notificó al patrono</u> del incidente, ocurrido a finales de diciembre de 1996, cuando el señor Orsini intentó besarla. Al así actuar, ésta no puso a su patrono en posición de tomar medidas correctivas adicionales, dadas las circunstancias, incluyendo, tal y como lo había pensado originalmente, despedir al señor Orsini.

Analizando **la totalidad de las circunstancias** de este caso, resulta forzoso concluir que el patrono no es responsable por los actos de hostigamiento sexual cometidos por el señor Orsini en la persona de la señora Albino. No

---

[56] Dicho manual dispone, en lo que nos atañe, de la manera siguiente:

> Toda persona que haya presenciado o sea víctima de hostigamiento sexual, podrá querellarse con sus supervisores según el procedimiento establecido en este manual. La Empresa investigará las querellas y <u>tomará aquella acción correctiva que entienda necesario</u>. Se garantizará la confidencialidad a todas las partes envueltas. Toda querella de hostigamiento será investigada por la Empresa. Toda investigación se mantendrá en estricta confidencialidad, y la Empresa no divulgará información sobre la querella o los resultados de la misma a personas que no estén envueltas en esta investigación. (Énfasis suplido).

se desprende del cuadro fáctico que, una vez tomadas las medidas correctivas para remediar el hostigamiento sexual, el patrono tuviera forma de saber, prever o anticipar que dicho hostigamiento se había reanudado. La conducta de la señora Albino indicaba todo lo contrario. Indicaba que el hostigamiento sexual se había erradicado.

Discrepamos de la Mayoría, toda vez que su resultado, contrario al propio texto de la Ley Núm. 17, tiene el efecto de imponer responsabilidad absoluta al patrono por actos de hostigamiento sexual en el empleo, ocurridos entre empleados. Adviértase que en este caso, el patrono tomó una medida correctiva inmediata, apropiada y razonable para terminar con el hostigamiento sexual, y no tuvo forma de saber que el presunto hostigamiento se había reanudado. La conducta exhibida por parte de la señora Albino, evaluada bajo el prisma de la totalidad de las circunstancias, nos obligan a disentir de la Mayoría.

Por otra parte, el resultado Mayoritario tiene repercusiones nefastas en las relaciones obrero-patronales, toda vez que implica que el patrono es responsable de fiscalizar diariamente las actividades de un empleado, que le ha traído una queja de hostigamiento sexual, para verificar que dicho hostigamiento no se ha reanudado. Estimamos que es a la víctima a quien le compete notificarle a su patrono de la ocurrencia o de la reanudación de dichos actos. Es con el beneficio de esta información que el patrono está obligado a actuar.

El resultado de la Mayoría conlleva invertir la obligación de notificar, que recae en la víctima, para que sea el patrono quien tenga la responsabilidad continúa de indagar si una conducta de hostigamiento sexual entre sus

empleados, **que entendía remediada**, se ha suscitado nuevamente.

Finalmente, la Opinión de la Mayoría tiene el efecto de imponer una norma de <u>responsabilidad casi absoluta a los patronos por actos de hostigamiento sexual entre empleados</u> en contravención a la sección 155(d) de la Ley Núm. 17, *supra*, que permite que el patrono levante unas defensas afirmativas cuando, conociendo del hostigamiento <u>toma medidas correctivas</u>. Medidas que, en este caso, surtieron efecto hasta que la propia víctima las infringió. Dicho de otra manera, el patrono tomó medidas correctivas que, ante <u>las actuaciones de la propia víctima</u>, pusieron al patrono en posición de colegir que las relaciones laborales entre ésta y el señor Orsini se habían normalizado, incluso, tornándose armoniosas.

III

Por los fundamentos antes expuestos, revocaríamos la Sentencia del Tribunal de Apelaciones, mediante la cual se confirmó al foro primario, que determinó que el patrono es responsable por los actos de hostigamiento sexual, en su modalidad de ambiente hostil, ocurridos entre empleados.

EFRAÍN E. RIVERA PÉREZ
JUEZ ASOCIADO