EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Ramón de León Flores, Dulce M. Hernández Ramos, ambos por sí, *et al*<br><br>Recurridos<br><br>v.<br><br>Hospital Universitario de Puerto Rico, Universidad de Puerto Rico, y otros<br><br>Peticionarios | |
| Rosaura Hernández Morales por sí y como madre custodia con patria potestad sobre sus hijas menores edad, etc.<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico a través de su dependencia el Hospital Universitario de Puerto Rico, etc. | Certiorari<br><br>2008 TSPR 127<br><br>174 DPR ____ |
| Edward Rosa Santos<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico, Universidad de Puerto Rico<br><br>Peticionarios | |

Número del Caso: CC-2007-689

Fecha: 23 julio de 2008

Tribunal de Apelaciones:

       Región Judicial de San Juan

Juez Ponente:

       Hon. Erik J. Ramírez Nazario

Abogados de la Parte Peticionaria:

        Lcdo. Jesús R. Morales Cordero
        Lcdo. Iván García Zapata
        Lcdo. Iván F. González Carmona

Abogados de la Parte Recurrida:

        Lcdo. Harold Vicente
        Lcdo. Wilfredo Luciano Quiñones
        Lcdo. Juan T. Peñagarícano
        Lcdo. Arturo Nieves Huertas


Materia: Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Ramón de León Flores, Dulce M. Hernández Ramos, ambos por sí, *et al*

Recurridos

v.

Hospital Universitario de Puerto Rico, Universidad de Puerto Rico, y otros

Peticionarios

Rosaura Hernández Morales por sí y como madre custodia con patria potestad sobre sus hijas menores edad, etc.

Recurridos

v.

Estado Libre Asociado de Puerto Rico a través de su dependencia el Hospital Universitario de Puerto Rico, etc.

Edward Rosa Santos

Recurrido

v.

Estado Libre Asociado de Puerto Rico, Universidad de Puerto Rico

Peticionarios

CC-2007-689

Sala Especial Integrada por el Juez Asociado señor Rebollo López como su Presidente y las Jueces Asociadas señora Fiol Matta y señora Rodríguez Rodríguez

SENTENCIA

San Juan, Puerto Rico, a 23 de julio de 2008

I

El presente caso exige que determinemos si procede modificar las cuantías concedidas por el tribunal

sentenciador como indemnización por los daños causados a la parte recurrida. Igualmente, debemos considerar si procede la defensa de negligencia comparada presentada por la parte peticionaria.

El caso de autos se inició en abril de 1988, con la presentación de la demanda de epígrafe. Mediante la misma, se reclamó una indemnización por concepto de los daños y perjuicios causados como resultado del intercambio de unas gemelas. Como consecuencia del intercambio, cada padre recibió una hija biológica y otra niña perteneciente a distintos progenitores. A continuación, exponemos los hechos pertinentes a la controversia.

El 3 de septiembre de 1985, nació en el Hospital Universitario del Centro Médico un par de gemelas, llamadas Tairí Marí y Marí Tairí. Las niñas eran hijas del matrimonio compuesto por Dulce María Hernández y Juan Ramón de León (matrimonio de León Hernández). Luego del alumbramiento, las hermanas gemelas pasaron a la guardería del hospital. Al día siguiente, Dulce observó las bebés y no notó nada particular. Posteriormente, Dulce fue dada de alta, pero las niñas permanecieron en el hospital unos días más.

El 6 de septiembre de 1985, el matrimonio de León Hernández recogió sus hijas en el hospital. En ese momento, Dulce observó que las niñas no se parecían aun cuando le habían dicho que eran gemelas idénticas. La enfermera le indicó lo siguiente: "los niños cambian de un día para otro; esas son tus nenas. Se ve que eres primeriza". Confiando en

la experiencia del personal del hospital, Juan y Dulce se llevaron a las niñas a su hogar.

De otra parte, el 4 de septiembre de 1985 en el mismo hospital, la señora Rosaura Hernández Morales dio a luz a un par de hermanas gemelas. Las niñas eran hijas de la señora Hernández y del señor Edward Rosa Santos, con quien ésta mantenía una relación consensual. A las niñas se les llamó Samantha y Jennifer. Una vez nacieron fueron trasladadas a la guardería del hospital. Las gemelas Samantha y Jennifer también reflejaban características distintas. Posteriormente, fueron dadas de alta y se trasladaron al hogar materno en el Residencial Jardines de Guaynabo. Allí discurrió la vida de las niñas junto a sus otros hermanos hasta que tuvieron 1 año y 7 meses de edad.

El 10 de abril de 1987, una hermana de Dulce de nombre Gloria Hernández Ramos, se encontraba en un dispensario médico en Guaynabo con una de sus sobrinas menor de edad. Esta menor le indicó que en dicho lugar se encontraba una de las sobrinas gemelas, la que llamaban Marí Tairí. Ante la insistencia de la niña, Gloria miró hacia donde estaba la otra niña y observó que entre ésta y su sobrina Mairí Tairí había un enorme parecido. La niña que Gloria vio estaba acompañada de su madre, Rosaura, con la cual habló. Gloria acompañó a Rosaura a su casa y llamó a su hermana Dulce para informarle lo que había observado. Ese mismo día, Dulce acudió con su hija a casa de Rosaura y se suscitó una escena conmovedora entre las gemelas y los adultos allí presente. A solicitud de Gloria, Rosaura accedió a someterse a unas

pruebas clínicas para confirmar lo que era evidente, que las niñas habían sido intercambiadas. Los resultados de los estudios médicos así lo comprobaron.

En un principio, los padres propiciaron encuentros entre las niñas para que confraternizaran. No obstante, conforme el consejo profesional que recibieron, dichos encuentros se hicieron cada vez más esporádicos, hasta que cesaron y se dio el intercambio final. El Tribunal de Primera Instancia, concluyó que la adaptación de las niñas a su nuevo hogar, una vez fueron integradas en el núcleo de sus respectivas familias biológicas, fue muy difícil. Las niñas lloraban, peleaban, y preguntaban continuamente por la hermanita que estaba con la otra familia.

Una vez presentada la demanda y tras llevarse a cabo un proceso de descubrimiento de prueba, la Asociación de Garantía de Seguros Misceláneos, en interés de la Universidad de Puerto Rico, admitió negligencia en el caso de autos. Luego de celebrarse un juicio en su fondo, el Tribunal de Primera Instancia dictó sentencia condenando a las peticionarias-demandadas al pago de una cantidad que ascendía a $1,645,000.00.

En la sentencia dictada, el tribunal indicó que todos los demandantes fueron evaluados por profesionales en la conducta humana y salud mental. Relató minuciosamente las conclusiones de los médicos sobre el estado emocional los demandantes, adoptando como conclusiones de hechos del tribunal las observaciones de los trabajadores de la salud.

A modo de ejemplo, adoptó la conclusión de la doctora Amarilys Muñoz que atendió a Rosaura, de que ésta atravesaba, a la fecha del juicio, una reactivación del síndrome de estrés pos traumático al punto que mostraba signos de una depresión aguda. Determinación de hechos 35. Tan es así, que no pudo testificar durante el juicio y se tuvo que admitir el testimonio presentado por ésta en ocasión de su deposición. La doctora Muñoz testificó que de Rosaura haber presentado testimonio, su depresión se agudizaría aun mas colocándola en riesgo de sufrir una sicosis. El foro primario concluyó que a la fecha del juicio era evidente todavía la grave carga emocional que este incidente supuso para las niñas, sus padres, los respectivos abuelos y demás familiares.

Los demandados apelaron la sentencia y el Tribunal de Apelaciones confirmó el dictamen apelado.

Inconformes aun, los demandados acudieron ante este Tribunal. En su escrito señalaron la comisión de los siguientes errores:

> Erró claramente el Tribunal de Apelaciones al confirmar la sentencia del [Tribunal de Primera Instancia] que concedió a la parte demandante cuantías exageradamente altas no justificadas por la prueba desfilada ni por los criterios de fijación de daños establecidos por la doctrina del Tribunal Supremo de Puerto Rico y descartar el análisis comparativo para valorar los daños de los demandantes.

> Erró el Tribunal de Apelaciones al descartar la doctrina de negligencia comparada que debe reducir la compensación que deben recibir en este caso algunos de los demandantes.

Nos negamos a expedir el auto. Presentada la solicitud de reconsideración, nos negamos a reconsiderar. El 7 de marzo de 2008, luego de una segunda moción de reconsideración, reconsideramos y emitimos una orden para mostrar causa por la cual no debíamos expedir el auto y dictar sentencia modificando la dictada por el Tribunal de Apelaciones a los efectos de reducir las cuantías concedidas a la parte demandante-recurrida por concepto de daños y perjuicios. Pasamos a resolver

## II

La estimación y valorización de daños en nuestro ordenamiento es una tarea angustiosa, para la cual no existen fórmulas matemáticas o científicas que nos indiquen cómo se justiprecia el dolor y el sufrimiento. En nuestro ordenamiento, la finalidad de la reparación del daño es resarcitoria y no punitiva. *Rodríguez Báez, etc. v. Nationwide Insurance Co. y otros,* 156 D.P.R. 614 (2002). No hay duda, que en la objetivación de los daños siempre estará presente un grado de especulación. La razonabilidad no obstante, es el elemento que siempre debe acompañar al juez a la hora de estimar y valorar los daños que ha sufrido una parte.

Si difícil y ardua es la labor para el juez de instancia, mucho más lo será para el magistrado que interviene en alzada, y quien sólo tiene ante sí un gélido y distante expediente. Por esta razón, este Tribunal se abstendrá de intervenir con la apreciación de la prueba y la determinación de daños que un foro de instancia haya emitido.

*Albino Agosto v. Martínez, Inc.*, 2007 T.S.P.R. 111, 171 D.P.R. __; *Rodríguez Báez, etc. v. Nationwide Insurance Co. y otros, supra.* Así pues, en deferencia a los foros de instancia, los tribunales apelativos solamente tienen la facultad de modificar las cuantías concedidas en aquellos casos en que las mismas "sean ridículamente bajas o exageradamente altas". *Id.*

Y es que así debe ser, pues como hemos advertido reiteradamente, las determinaciones de hecho de los foros inferiores merecen gran deferencia por los foros apelativos. *Flores v. Soc. de Gananciales*, 146 D.P.R. 45 (1998); *Monllor v. Soc. de Gananciales*, 138 D.P.R. 600 (1995). Como sabemos, la apreciación de la prueba efectuada por el foro sentenciador goza de respeto y deferencia. *Mun. de Ponce v. Autoridad de Carreteras y Trasportación*, 153 D.P.R. 1 (2000); *Trinidad García v. Chade*, 153 D.P.R. ___ (2001). El tribunal de primera instancia es el foro ante el cual declaran los testigos y el magistrado que preside tiene la oportunidad de apreciar su comportamiento, de escuchar el testimonio, interpretar sus matices, observar el dolor humano y aquilatarlo y, finalmente, adjudicar credibilidad.

La parte que solicita la modificación de la indemnización concedida por el foro de instancia, deberá demostrar que en efecto existen circunstancias que así lo justifican. *Albino Agosto v. Martínez, Inc., supra.* En este sentido, la mera alegación sobre la improcedencia de las compensaciones concedidas es insuficiente para que los foros apelativos modifiquen las mismas. *Id.* Es decir, sólo cuando

se nos acredite que la cuantificación de los daños es irrazonable procederemos a revisarla, de lo contrario, reiteramos la norma de abstención judicial para intervenir con la apreciación de la prueba que hizo el foro de instancia en ausencia de pasión, prejuicio, error manifiesto o parcialidad.

Por otro lado y como sabemos, prima en nuestro ordenamiento jurídico la doctrina de negligencia comparada. *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139 (1996). Conforme a ésta, la negligencia concurrente o contribuyente del demandante sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximirle totalmente de responsabilidad. Esta norma tiende a individualizar las indemnizaciones por daño, colocando el rigor económico en las partes conforme a la proporción de su descuido y negligencia.

**III**

En el presente caso, las peticionarias aducen que las cuantías concedidas a la parte recurrida son excesivamente altas en comparación con algunas otras que han sido provistas en casos que, según ellas, son similares al de autos. Igualmente, arguyen que procede la modificación de las cuantías, toda vez que ninguno de los demandantes-recurridos sufre una condición de incapacidad parcial o permanente que justifique la concesión de la indemnización otorgada. Estamos en total desacuerdo.

Del expediente surge que la parte demandante-recurrida presentó prueba testifical y pericial que nunca fue

contradicha. De hecho, de la sentencia del tribunal de instancia podemos colegir que dicho foro descansó en la prueba desfilada y ejerció un sano juicio al cuantificar los daños reclamados. Vastas son las determinaciones que el foro sentenciador hiciere a tales efectos. Así, por ejemplo, el tribunal consignó:

> Al apreciar los testimonios en corte[,] resulta patente que este suceso tan desgraciado ha afectado profundamente a todos los demandantes[,] quedando sus vidas marcadas por ello. Según lo descubrió Gloria [abuela]: "se volvieron todos como locos".

Del expediente surge que todos los demandantes fueron evaluados por profesionales de la salud mental. Según las determinaciones del foro sentenciador, "[l]os testimonios de los peritos de la parte demandante corroboran lo que el Tribunal pudo percibir de los testimonios vertidos en corte por los demandantes". La sola lectura de las determinaciones de instancia refleja que, hoy por hoy, los demandantes-recurridos padecen de sentimientos de culpa, tristeza, ansiedad, y trastornos depresivos. Incluso, a pesar de que el tratamiento de cada cual puede variar en intensidad y duración, en ninguno de los casos se recomienda que sea por un período menor de 6 meses. Más allá de esto, dichos tratamientos tampoco garantizan la curación total. Véase, Determinación Núm. 51, Apéndice en la pág. 412. El costo de los tratamientos, alegadamente asciende a $649,500.00. Véase, Determinación Núm. 52, Apéndice a la pág. 413.

En vista de lo anterior, no podemos concurrir con la parte peticionaria en que los daños sufridos no justifican la concesión de la indemnización provista por el foro de

instancia. Ciertamente, a la luz de la prueba desfilada, los daños causados a los demandantes-recurridos son indiscutibles. En efecto, entendemos que la cuantía concedida a los demandantes-recurridos resulta a todas luces razonable y no debe ser modificada, toda vez que las peticionarias ni siquiera han presentado prueba alguna que demuestre prejuicio, parcialidad, pasión o error manifiesto en la adjudicación y valoración de los daños.

Por otro lado, la parte peticionaria arguye que erró el Tribunal de Apelaciones al confirmar al foro de instancia en su valoración de daños sin hacer un análisis comparativo de las cuantías concedidas en otros casos por este Tribunal. Entendemos, no obstante, que el argumento es improcedente.

De la sentencia del Tribunal de Apelaciones surge que dicho foro tomó en consideración la referida alegación. No obstante, dado el hecho de que en nuestra jurisdicción no existía un caso similar al de autos, concluyó que los casos citados por la parte peticionaria no constituían un precedente obligatorio.[1] Señaló, que la valoración de daños efectuada por instancia se fundamentó estrictamente en la prueba desfilada ante dicho foro y que la determinación final a tales efectos fue producto del análisis ponderado de los hechos particulares del caso de autos. A nuestro entender, actuó correctamente el foro apelativo al así resolver. Nada de lo expresado al respecto en el recurso ante nuestra consideración nos persuade en contrario.

_____

[1] Véase, por ejemplo, *Toro Aponte v. E.L.A.*, 142 D.P.R. 464, 478 (1997).

En su segundo señalamiento de error, la parte peticionaria aduce que el Tribunal de Apelaciones debió reducir la cuantía concedida, a la luz de la doctrina de negligencia comparada.

En su recurso, la parte peticionaria entiende que se les debe atribuir a los padres de las gemelas un por ciento de negligencia. Éstas arguyen que los padres de las gemelas aceptaron llevárselas a su hogar, aun cuando las mismas presentaban distintos rasgos físicos y a pesar de habérsele indicado que éstas serían gemelas idénticas. Aducen que al hacer esto, contribuyeron negligentemente a la ocurrencia del daño. De hecho, sostienen que "[f]ueron los padres y familiares de las gemelas quienes observaron el desarrollo de las niñas de cerca y por lo tanto [los] que tenían la obligación de hacer algo para verificar la identidad de las niñas. No hicieron nada, por lo que ahora no pueden beneficiarse de su propia omisión". Véase, *Petición de Certiorari*, en la pág. 30. No estamos de acuerdo con esta aseveración.

Concurrimos con el foro apelativo en que el deber de entregar los bebés correctos a sus respectivas familias reside enteramente en el personal del hospital. Además, de los hechos surge que Dulce inquirió sobre la diferencia entre las niñas y que la enfermera del hospital le aseguró que aquéllas eran sus hijas. Aclaradas sus dudas iniciales, y confiando en el profesionalismo y experiencia del personal hospitalario, los padres no tenían deber ni motivo alguno para indagar sobre la identidad de sus hijas. De hecho, del

expediente surge que Juan Ramón se había atribuido alguna de las características físicas de la niña, "por el extraordinario parecido entre ambos", lo que demuestra que, hasta el momento del reencuentro, los padres no sospechaban del intercambio. Véase, Determinación Núm. 15 del Tribunal de Primera Instancia, Apéndice en la pág. 407. En efecto, entendemos que los padres no deben responder en modo alguno y la contención de la parte peticionaria es inmeritoria.

Por las razones que anteceden se expide el auto y se dicta sentencia confirmando la dictada por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente con opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Ramón de León Flores, *et als*.<br>    Recurridos<br><br>          vs.<br><br>Hospital Universitario de Puerto<br>Rico, y otros<br>    Peticionarios | |
| Rosaura Hernández Morales por sí<br>y como madre custodia con patria<br>potestad sobre sus hijas menores<br>de edad, etc.<br>    Recurridos<br><br>          vs.<br><br>Estado Libre Asociado de Puerto<br>Rico, etc.<br>    Demandados | CC-2007-689<br><br><br><br>*CERTIORARI* |
| Edward Rosa Santos<br>    Recurrido<br><br>          vs.<br><br>Estado Libre Asociado de Puerto<br>Rico, Universidad de Puerto Rico<br>    Peticionarios | |

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 23 de julio de 2008

El 7 de marzo de 2008 una Sala Especial[2], le concedió término a la parte demandante recurrida para que mostrara

---

[2] Compuesta dicha Sala Especial por el Juez Asociado señor Rebollo López, como su Presidente, y las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez; ello debido a la inhibición del Juez Presidente señor Hernández Denton y a la no intervención del Juez Asociado señor Rivera Pérez. La Juez Asociada señora Rodríguez Rodríguez hizo constar, en dicha Resolución, que denegaría el recurso.

causa por la cual no se debía expedir el auto de *certiorari* radicado y dictarse Sentencia "...modificatoria de la emitida en el presente caso ... a los efectos de reducir las cuantías concedidas a la parte demandante recurrida por concepto de daños y perjuicios." (Énfasis suplido.)

En el día de hoy, una mayoría de los integrantes de la referida Sala Especial confirma la sentencia recurrida. Disentimos; veamos por qué.

I

El recurso de autos tiene su origen en dos demandas interpuestas durante el año 1988 ante la Sala de San Juan del Tribunal de Primera Instancia, en las cuales se reclamó una indemnización por concepto de los daños y perjuicios que le fueron ocasionados a dos pares de hermanas gemelas, a sus padres, abuelos y tíos, por el hecho de que éstas fueron intercambiadas, luego de nacer, en el Hospital Universitario de Puerto Rico. Exponemos los hechos pertinentes a la controversia.

El 3 de septiembre de 1985, nacieron en el Hospital Universitario del Centro Médico unas gemelas, llamadas Tairí Marí y Marí Tairí. Las niñas fueron producto del matrimonio entre Dulce María Hernández y Juan Ramón de León. Como era la costumbre con todos los recién nacidos, las hermanas gemelas fueron trasladadas a la guardería del Hospital. Al día siguiente de su alumbramiento, la Sra. Hernández de León vio a las niñas. Posteriormente, ésta fue

dada de alta, pero se le indicó que las niñas le serían entregadas más tarde. El 6 de septiembre de 1985, cuando el matrimonio De León-Hernández fue a recoger a sus hijas, la madre se percató de que éstas lucían distintas a pesar de que se le había informado que eran gemelas idénticas y que ella así las recordaba. Así se lo indicó a la enfermera, quien le aseguró que "los niños cambian de un día para otro; esas son tus nenas. Se ve que eres primeriza". Así pues, inexplicablemente confiando en la alegada experiencia del personal del Hospital y haciendo caso omiso de su personal observación y conclusión, el mencionado matrimonio se llevó a las niñas a su hogar sin realizar gestión o investigación posterior alguna sobre la referida observación.

Paralelamente, el 4 de septiembre de 1985 la señora Rosaura Hernández Morales había dado a luz a un par de hermanas gemelas producto de su relación consensual con el señor Edward Rosa Santos. Las niñas, Samantha y Jennifer, igualmente fueron trasladadas a la guardería del Hospital hasta que, cinco días más tarde, fueron dadas de alta. Samantha y Jennifer lucían características distintas. Una de ellas era rubia y robusta, mientras la otra era más pequeña y de pelo oscuro.

Un año y siete meses después, mientras la tía del primer par de gemelas, la señora Gloria Hernández Ramos (Gloria), se encontraba en un dispensario médico cuando se percató de que allí estaba una niña con un sorprendente

parecido a su sobrina, Marí Tairí. La niña iba acompañada de su madre, Rosaura, a la que interrogó y luego acompañó a su hogar. Gloria le comunicó lo sucedido a su hermana Dulce, quien, horas más tarde, llevó a las niñas a la casa de Rosaura.

Allí, cada niña comenzó a tocar a la otra y empezaron a gritar. Igualmente, tanto los adultos como las niñas empezaron a llorar. Dulce casi se desmaya y Rosaura enmudeció ante la escena. En la noche, Juan Ramón (padre de Marí Tairí y Tairí Marí) fue a la casa de Rosaura a ver las niñas e, igualmente, quedó "afectado" por el suceso.

Posteriormente, las partes se sometieron a pruebas clínicas con el propósito de comprobar si las niñas habían sido intercambiadas. El estudio demostró que Samantha no podía ser hija de Rosaura y que Tairí Marí no podía ser hija de Dulce. Se procedió, entonces, al intercambio de las niñas con sus respectivos padres biológicos.

Una vez presentada la demanda y tras llevarse a cabo un proceso de descubrimiento de prueba, la Asociación de Garantía de Seguros Misceláneos, en interés de la Universidad de Puerto Rico, admitió negligencia en el caso de autos. Finalmente, luego de celebrarse el juicio en su fondo, el tribunal de instancia dictó sentencia condenando a las demandadas peticionarias a un pago total ascendente a $1,645,000.00; esto es:

1) A Dulce María Hernández Ramos, la suma de $400,000.

2) A Juan Ramón de León Flores, la suma de $400,000.

3) A Rosaura Hernández Morales, la suma de $400,000.

4) A Gloria Hernández Ramos, la suma de $100,000.

5) A Teófila Flores Ramos, la suma de $100,000.

6) A Edward Rosa Santos, la suma de $25,000.

7) A Carmen Gloria Ramos Salgado, la suma de $25,000.

8) A Eugenio Hernández Báez, la suma de $25,000.

9) A Tairí de León Hernández, la suma de $50,000.

10) A Samantha y a Jennifer Rosa Hernández, la suma de $50,000 a la primera y $25,000 a la segunda.

11) A Joselyn y Aida Cruz Hernández y a Deborah Huertas Hernández la suma de $15,000 a cada una de éstas.

Inconformes, acudió la parte demandada peticionaria ante este Tribunal, alegando que el Tribunal de Apelaciones erró:

> ... al confirmar la sentencia del [Tribunal de Primera Instancia] que concedió a la parte demandante <u>cuantías exageradamente altas</u> no justificadas por la prueba desfilada ni por los criterios de fijación de daños establecidos por la doctrina del Tribunal Supremo de Puerto Rico y descartar el análisis comparativo para valorar los daños de los demandantes.
>
> ... al descartar la doctrina de <u>negligencia comparada</u> que debe reducir la compensación que deben recibir en este caso <u>algunos</u> de los demandantes. (Énfasis suplido.)

II

El propósito de la acción de daños autorizada por el Artículo 1802 del Código Civil, 31 L.P.R.A. §5141, <u>es reparar los daños causados y no castigar al que los perpetró</u>. Véase: <u>Rodríguez Báez, etc. v. Nationwide</u>

Insurance Co. y otros, 156 D.P.R. 614 (2002). De ahí que los tribunales sentenciadores deberán asegurarse que la compensación que conceden a los reclamantes sea una justa y razonable, y que la misma no constituya un castigo indirecto a la parte demandada. *Id*.

La cuantificación de los daños reside, de ordinario, en el sano juicio y discreción del juzgador de hechos, quien ha estado en contacto directo con la prueba. Rodríguez Báez, etc. v. Nationwide Insurance Co. y otros, *supra*. Así pues, en deferencia a los foros de instancia, los tribunales apelativos únicamente deberán modificar las cuantías concedidas en aquellos casos en que las mismas "sean ridículamente bajas o exageradamente altas". *Id*.

La parte que solicite la modificación de la indemnización concedida por el foro de instancia, deberá demostrar que en efecto existen circunstancias que así lo justifican. Albino Agosto v. Martínez, Inc., res. el 4 de junio de 2007, 2007 TSPR 111. La mera alegación sobre la improcedencia de las compensaciones concedidas es insuficiente para que los foros apelativos modifiquen las mismas. *Id*. La abstención judicial deberá prevalecer en ausencia de prueba que demuestre que ha mediado prejuicio, parcialidad, pasión o error manifiesto en la evaluación y valoración de los daños. Rodríguez Báez, etc. v. Nationwide Insurance Co. y otros, *supra*.

III

Por otro lado --y aun cuando la orden de mostrar causa emitida en el presente caso no versa sobre el segundo señalamiento de error-- debe señalarse que en nuestra jurisdicción impera la doctrina de negligencia comparada. Véase, Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996). La misma fue adoptada por disposición de la Ley Núm. 28 de 9 de junio de 1956, que enmendó el Art. 1802 de nuestro Código Civil, el cual dispone:

> El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. **La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización.**
> 31 L.P.R.A. §5141. (Énfasis suplido.)

De conformidad con esta doctrina, la negligencia concurrente del perjudicado-demandante reduce la compensación a la que tiene derecho. Quiñones López v. Manzano Pozas, *supra*, en la pág. 176. De esta forma, la responsabilidad de cada parte por los daños causados, o sufridos, se distribuirá en proporción a su negligencia.

IV

Como este Tribunal expresara ya hace algunos años "... no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutren la valoración del dolor físico y mental humano y permita, mediante la aplicación de unas teclas o el oprimir unos botones, obtener el resultado final apropiado. Esta función

descansa sobre el ejercicio discrecional prudente, juicioso y razonable del juzgador de hechos asumido por un sentido de justicia y de consciencia humana." Urrutia v. Autoridad de Acueductos, 103 D.P.R. 643 (1975). (Énfasis suplido.)

Ahí, precisamente, radica nuestra enorme preocupación con la valoración y adjudicación de los daños concedidos por el tribunal de instancia en el presente caso. Un examen de las cuantías concedidas demuestra, claramente, que en el caso de autos no hubo una prudente y juiciosa individualización de las cuantías concedidas por concepto de daños, a los distintos demandantes, causando ello que las cuantías concedidas sean "exageradamente altas". Meramente a manera de ejemplo, señalamos que el tribunal de instancia le concedió a las dos madres demandantes exactamente la misma cantidad de dinero por concepto de daños, esto es, la suma de $400,000. Cabe preguntarse: ¿ambas madres sufrieron y/o experimentaron los mismos sufrimientos? La misma situación se da con los demás codemandantes. Esto es, el tribunal de instancia parece ser que los "agrupó" conforme su relación de parentesco con las gemelas demandantes.

Esa, ciertamente, no es una actuación prudente y juiciosa de estimación de daños; sobre todo, cuando consideramos que puede argumentarse, con alguna justificación, que a los codemandantes Dulce María Hernández Ramos y su esposo Juan Ramón de León Flores, se les puede imputar algún por ciento de negligencia comparada

ya que éstos, desde el primer día, se percataron de que, a pesar de haber sido informados de que se trataba de gemelas idénticas, las criaturas que le fueron entregadas no lo eran y no hicieron nada al respecto. ¿Deben ser éstos compensados con la misma cantidad de dinero que los otros padres?

En fin, entendemos que deberían reducirse las cuantías concedidas a los demandantes en el presente caso, ello debido a que las mismas son "exageradamente altas". Rodríguez Báez, etc. v. Nationwide Insurance Co. y otros, *supra*. A esos efectos, somos del criterio que los codemandantes deberían ser compensados de la siguiente manera:

1) A Dulce María Hernández Ramos, la suma de $225,000.

2) A Juan Ramón de León Flores, la suma de $225,000.

3) A Rosaura Hernández Morales, la suma de $300,000.

4) A Gloria Hernández Ramos, la suma de $100,000.

5) A Teófila Flores Ramos, la suma de $75,000.

6) A Edward Rosa Santos, la suma de $25,000.

7) A Carmen Gloria Ramos Salgado, la suma de $25,000.

8) A Eugenio Hernández Báez, la suma de $25,000.

9) A Tairí De León Hernández, la suma de $50,000.

10) A Samantha y a Jennifer Rosa Hernández, la suma de $50,000 a la primera y $25,000 a la segunda.

11) A Joselyn y Aida Cruz Hernández y a Deborah Huertas Hernández la suma de $15,000 a cada una de éstas.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado